LIVINGSTON et al., Appellants, v. WABASH RAILROAD COMPANY.

In Banc, December 10, 1902.

1. **Negligence:** TRESPASSER: RUNNING TOWARD RAILROAD TRACK. The liability of a railroad for killing a child can not be made to depend solely on the impossibility of stopping the train after the child was actually on the track, if the child was seen, or by the exercise of ordinary prudence, could have been seen running into danger in time to have stopped the train.

2. ———: ———: ———: CONFLICT OF INSTRUCTIONS. The engineer testified that if he had seen the child running toward the track and realized her peril, as other witnesses testified they did, he could have stopped the train in time to have avoided the accident. The jury were told in an instruction given by plaintiff that the defendant was liable if the child took fright and ran diagonally across the depot platform in a manner to indicate to a person of ordinary prudence and caution that she intended to and would run upon the track in front of the approaching train, and the engineer saw, or by the exercise of ordinary care, could have seen her in time to have avoided the accident, but negligently failed to do so. On the other hand defendant's instruction told the jury that if at the time the engineer discovered, or by the exercise of ordinary care, could have discovered the child on the track it was impossible to stop the train in time to save the child's life, the verdict must be for the defendant. *Held*, that these instructions are in direct conflict and warrant a reversal of a judgment for defendant, the first correctly declaring the law, and the second being erroneous in wholly ignoring any duty from the engineer towards the child until she was actually upon the track.

3. ———: ———: HEEDING WARNING: DUTY OF ENGINEER. As the

train approached the station platform, the engineer gave some sharp whistles to warn some foolhardy boys who were on the track, and who at once got out of all danger, but the engineer continued to look at them and made no effort to see a little girl, who at the sounding of the danger signals, became frightened and ran diagonally across the platform upon the track and was killed. *Held*, that the engineer's duty to see the child could not be excused by the fact that he continued to look at and speak to the boys after they were out of danger.

4. ———: DISCRETION OF TRESPASSER: APPLICABILITY TO CHILD. An instruction which lays down an abstract principle applicable to persons walking or running along platforms paralleling a railroad track, has no applicability to a child three and a half years old, that takes fright and runs diagonally across the platform towards the track.

5. ———: UNATTENDED CHILD. The fact that a small child was at the station platform unattended is a circumstance bearing on the question of whether or not it was there unattended by its mother's permission.

6. ———: FRIGHTENED CHILD. The engineer has no right to assume that a child three and a half years old running diagonally across the depot platform towards his approaching train will stop before reaching or attempting to cross the track. That assumption can be made applicable only to persons of mature years.

7. ———: EVIDENCE: OMITTING ESSENTIAL FACTS FROM VIEW. It is error for the court to change plaintiff's questions so as to leave out of view essential facts. If a child has taken fright at the sounding of danger signals and runs diagonally across the track toward the approaching train, it is error for the court so to change an inquiry concerning the engineer's duty to stop the train, as to leave out of view the direction in which the child was running, or to assume that there were persons near who would rescue the child, or to assume that the child had sufficient discretion to take care of itself.

Appeal from Macon Circuit Court.—*Hon. Andrew Ellison*, Judge.

REVERSED AND REMANDED.

*Dysart & Mitchell* and *Charles P. Hess* for appellants.

(1)   The defendant's expert witness gave evidence tending to show that it was impossible for the engineer

to save the child after it got upon the track. The plaintiffs on cross-examination asked these witnesses if in their opinion the engineer could have saved the child if he had seen her running on the platform in a manner indicating that she was going to run upon the track. On the objection of the defendant the court refused an answer to the question, and stated in the presence of the jury that he agreed with defendant's counsel that the engineer was not required to take notice of the child until it got upon the track. This was error. Duerst v. Stamping Co., 63 S. W. 827; Graney v. Railroad, 140 Mo. 89; Prewitt v. Railroad, 134 Mo. 615; Schmidt v. Railroad, 149 Mo. 283. Defendant's first instruction is erroneous in that it ignores the actions and motions of the child while running on the platform towards the track, and in directing a verdict for the defendant if the engineer was unable to save the child after being discovered "upon the track." It also erroneously limits the consideration of the jury to the speed of the train at the time the child was struck. (2) The instruction is also contradictory in its terms. It tells the jury that although they may believe that at the time and place the child was killed, the engine was running at a rate of speed in excess of six miles an hour, the court qualifies it below with this extraordinary statement—"and that said engine was then running not to exceed six miles an hour." The instruction is also vicious in that it singles out one particular fact, and authorizes a finding upon such fact, ignoring other and controverted facts in the case. State v. Hibler, 149 Mo. 478; State v. Rutherford, 152 Mo. 124. (3) The defendant's second instruction is erroneous, for the reasons above stated, and for the further reason, that it directs a verdict for the defendant if the child got upon the track after the speed of the train had been reduced to six miles an hour, and it was then too late to save its life by the exercise of ordinary care. It was the duty of the engineer to be on the lookout for the child before it got upon the track. Baird v. Railroad, 146 Mo. 280; Morgan v. Railroad, 159 Mo. 281. (4) Defendant's fifth,

sixth and seventh instructions are bad. They are dec-
larations of law in the abstract, and even if proper in
ordinary cases, could only apply to persons of mature
age and discretion. These instructions also direct a
verdict for the defendant if the child suddenly ran upon
the track in front of the engine, ignoring every other
fact and circumstance in the case. These instructions
amounted to a direction to the jury to find for defendant,
as it was a conceded fact that the child did run on the
track in front of the engine. It is error to single out
one fact in a case, and direct a verdict upon it, when
there are other controverted facts in the case. A child
three and a half years old is incapable of contributory
negligence. Fink v. Furnace Co., 10 Mo. App. 61; Far-
ris v. Railroad, 80 Mo. 325; Frick v. Railroad, 75 Mo.
542. (5) The defendant's eleventh instruction is er-
roneous for the following reasons: (a) There was no
evidence in the case to warrant an instruction based on
the negligence of the mother of the child in permitting
it to wander from home. (b) The instruction submits
a question of law to the jury. It tells the jury to find
for defendant if the mother negligently permitted the
child to wander, etc., without explaining what consti-
tuted negligence on the mother's part. Goodwin v.
Railroad, 75 Mo. 73; Duerst v. Stamping Co., 63 S. W.
831. The mother and aunt of the child did not know it
was away from home. The aunt had given the child
bread at her dining-room door about ten minutes before
it was killed. There was no negligence of the mother
on which to base an instruction. Rosenkranz v. Rail-
road, 108 Mo. 9; Reilly v. Railroad, 94 Mo. 600; Frick
v. Railroad, 75 Mo. 542; Winters v. Railroad, 99 Mo.
509; State v. McLain, 159 Mo. 353; Duerst v. Stamping
Co., 63 S. W. supra. The last two cited cases hold that
it is error to submit a question of law to the jury, such
as negligence, without defining what constitutes negli-
gence. (6) Defendant's twelfth instruction is erro-
neous in that it tells the jury that the engineer was un-
der no obligation or duty to notice the child until it got
upon the track, without regard to surrounding circum-

stances.    No matter how negligent the engineer was in failing to see the child; no matter if he saw the child on the platform and threatening to run on the track ahead of his engine; no matter how fast he was running his train; the jury are instructed to find a verdict for the defendant, if the engineer could not stop his train in time to save the child, after she was seen, or could have been seen upon the railroad track.    State v. Rutherford, 152 Mo. 124; Baird v. Railroad, 146 Mo. 280; Schmidt v. Railroad, 149 Mo. 269.

*Geo. S. Grover* for respondent.

(1)    The opinions sought to be elicited by plaintiffs from the expert witnesses were inadmissible, because the questions asked assumed that defendant's engineer was a mindreader, and that he was bound to presume, if he saw or could have seen the child running along the depot platform, towards the track, that it would not remain in a place of safety, and would rush into a place of obvious danger, where it was impossible to save its life.    Boyd v. Railroad, 105 Mo. 381; Hyde v. Railroad, 110 Mo. 279; Reardon v. Railroad, 114 Mo. 405; Graney v. Railroad, 140 Mo. 89; Prewitt v. Eddy, 134 Mo. 615.    (2)    Whatever was omitted in defendant's first instruction, if anything, on the issue as to the perilous situation of the child, while on the depot platform, was certainly supplied by plaintiffs' instructions above quoted, and therefore plaintiffs are estopped from complaining of it here.    Gordon v. Burriss, 153 Mo. 223.    (3)    The engineer did not see the child, and never saw it, for two excellent reasons:    (a)    Because, as he came by the depot, he was doing his utmost to slacken the speed of his engine, in order to save the lives of three reckless young men, who were risking theirs in an indefensible experiment, on the south part of the depot platform.    It was the engineer's first duty to save the lives of those young men if he could, and as he did.    Nor is he subject to any just criticism on account of what he did, or failed to do, by reason of that

effort. He was placed in a very trying situation through no fault of his. His judgment of what was best to be done in such an emergency necessarily governed his action. "This judgment had to be formed instantaneously; there was no time for deliberation, and whether right or wrong, his action in accordance with it can not be held negligence." Bell v. Railroad, 72 Mo. 61. (b) Because, after slacking the speed of his engine in the effort to save the young men, above described, the child, frightened by the danger-signals sounded to warn the young men, ran upon the track in front of the engine, so close to it that the engineer could not see it, and even if he had seen it, it was then impossible to stop the engine in time to save its life. These facts completely exonerated defendant. (4) The seventh instruction properly told the jury that if the child suddenly stepped upon defendant's track and was simultaneously thereafter struck and killed by one of defendant's engines, there could be no recovery. This was in exact accord with the principle announced by this court in Yancey v. Railroad, 93 Mo. 438; Boyd v. Railroad, 105 Mo. 379, and Loring v. Railroad, 128 Mo. 357.

## In Division One.

VALLIANT, J.—Plaintiff's child, three and a half years old, was run over and killed by a locomotive drawing a passenger train of defendant near its depot in the city of Macon in March, 1896, and this suit is to recover damages for the act which, plaintiffs allege, was caused by the negligence of defendant's servant in charge of the locomotive. The petition alleges three acts of negligence, viz.: running the train at a speed of more than six miles an hour in violation of a city ordinance, failure to give signals, and failure to stop the train in time to save the life of the child after its perilous condition was discovered or could have been discovered by the exercise of ordinary care on the part of the engineer; those acts were denied in the answer, which contained also a plea

of contributory negligence on the part of the child and on the part of the plaintiffs in permitting the child to wander unattended upon or near the railroad track. The trial in the circuit court resulted in a verdict and judgment for the defendant, and the plaintiffs appeal.

It was shown at the trial that the defendant's railroad runs on a line north and south through the city of Macon; that just south of its depot it crosses the Hannibal and St. Joseph railroad on an elevated trestle or bridge. From the bridge northward to and beyond the point of the accident the track is straight and the view unobstructed. There is a platform sixteen feet wide along the east side of the track from the bridge to and beyond the depot and beyond the point of the accident. The depot abuts this platform on the east side. Sixty-one feet north of the depot on the same side, also abutting the platform, is a baggage room, opposite to which across the track is a trunk platform forty-seven feet long. From the bridge to the north end of the depot the distance is one hundred and ninety-nine feet; from the north end of the depot to the south end of the baggage room, it is sixty-one feet, so that from the bridge to the south end of the trunk platform opposite the baggage room, which is the point of the accident, the distance is two hundred and sixty feet. On the west side of the railroad track, thirty-five feet from the bridge, is a water tank; from the water tank to the point of the accident it is two hundred and twenty-five feet.

There was an ordinance of the city forbidding such trains to run faster than six miles an hour within the limits. This train crossed the bridge at the rate of twenty miles an hour and slowing down passed the depot at ten miles an hour, and still slowing down stopped with the baggage car about opposite the baggage room, which was the usual place of stopping. At the instant of striking the child the locomotive was not moving exceeding six miles an hour, possibly not faster than three miles.

As the train came over the bridge the little girl, with her brother, who was five years old, was at the

fence within a few feet of the north end of the depot. At that time three young men were standing on the west edge of the platform opposite the south end of the depot, apparently dangerously near the railroad track, and when the locomotive was between the bridge and the tank, the engineer, seeing the young men, sounded the danger signal of several sharp blasts of the whistle and applied the emergency brake; the young men moved readily away from the position of danger, and as the engine passed them the engineer looking at them called out to them, saying: "It's a wonder you would not stand on the track and get killed." When this danger signal was sounded the little girl broke away from her brother and ran in a northwesterly direction diagonally across the platform towards the trunk platform, and ran upon the track at a point about the south end of the trunk platform, where she was struck by the engine and was carried or rolled along, no one knew how, to near the north end of the trunk platform, where she fell and the wheels of the engine passed over her, killing her. The witnesses differed in their estimate of the distance in front of the engine at which the child got upon the track, varying from thirty feet to three or four feet. The engineer did not see her at all and did not know that the accident had occurred until his engine had come to a stand and he had come down from the cab to oil the machine. From the point at the fence where the child was when it started to run to the point where it started to cross the track is estimated at fifty feet, or eighteen steps. Several witnesses saw the child as she was running along the platform, and from the course she was pursuing apprehended that she was running into peril; one witness turned his back to avoid seeing her struck by the locomotive. The child wore a red dress.

William Ross, the engineer in charge of this locomotive, a witness for defendant, testified that when he saw the three young men too near the track he was running twenty miles an hour, he sounded the danger signal and applied the emergency brake; the young men moved away readily, and after he passed them he

released the emergency brake, and the engine rolled on past the depot at the rate of ten miles an hour. That if he had been running only six miles an hour he could have stopped within thirty-five to fifty feet by using the emergency brake, or without that brake he could have stopped in thirty feet by reversing the engine. He testified that after passing the young men he looked ahead and saw a large crowd on the platform in front of the depot; that he did not see the child. "Q. Were you in a position to see to the north as well as one who is within three or four feet east of your track? A. I don't know whether I was or not; I was sitting higher than they; my head was about seven feet above the level of the sidewalk, that is above the platform; I expect I could see north as well as those opposite to the window where I sat; I think I was in a position at least to see as well as they could. Q. What was your speed when you struck the child first, as has since been explained to you? A. At that time when I struck the child the engine could not have been going over six miles an hour. As I passed the north end of the depot the train was running nine or ten miles an hour. I can stop quicker when running six miles an hour than when running ten miles an hour. The faster a train is going the longer it takes to stop. The child was found at the north end of that trunk platform [that platform is forty-seven feet long]. That platform comes up about level with the rails. Q. If you had let the emergency stop stay on, in what distance should your train have come to a standstill? A. It would have stopped in about two hundred and seventy feet. Q. As it was, how far did your train run? A. I don't know; beyond the platform, anyhow; I looked at the men as I passed them. That child could not have been seen from where those men were under any circumstances. Q. If you had looked and seen the child, would you not have let your emergency stop remain on? A. I would if I had seen the child—yes, sir, I would have done anything I could to stop. Q. Now, would not your train have come to a stop if you had left the emergency stop on before you struck the

child? A. Most assuredly, if it came on where the men say it did. . . . If I had seen the child down where I made the emergency brake I could have stopped before striking her.''

James Foster, a locomotive engineer, an expert witness for defendant, on cross-examination said: ''Q. Just take it now as Mr. Ross said it was; say he was running twenty miles an hour as he passed the steps and went into the emergency; then slowed it down until when he was passing the north end of the depot he was running ten miles an hour; under those circumstances if you had seen that child running in a northwestern direction towards your track, what would you have done, having released the emergency just as he said he did? A. I would have applied my air because I would expect to get better results from it. It would be a detriment to reverse the engine. Q. What good would applying the air do? A. It would be better probably than to reverse the engine. Q. Explain what it would do—applying the air? A. It would take hold. It would have a tendency to stop the train if you gave it time enough. It would take about two seconds. It would have slowed up or stopped before it reached the child. It would slow up, I expect, by the time it went that distance as near as I got it. If I had seen the child running in a northwestern direction towards the track, as they say, I would have applied my brake. That would be my judgment. If it was so close that my judgment would teach me that it was going on the track I would have applied my air. When you go into the emergency and use fifteen or twenty pounds, you couldn't then use the balance of the air; it wouldn't have done any good.''

All the expert testimony tended to show that after the child got on the track, under the circumstances indicated in engineer Ross's testimony, it was impossible to have stopped in time to have saved its life.

R. L. Hewitt, a locomotive engineer, an expert witness for defendant, so testified, and on cross-examination this occurred: ''Q. Had you seen the child running

in a northwesterly direction towards your track—indicating that it was going to run upon the track—. Mr. Grover: If your Honor please, we object to this line of inquiry. Our liability does not arise until we see the child in a dangerous situation. The mere fact that the child was running on the platform does not occasion a liability on our part. While the child was running it was not upon the track. By the court: The objection is sustained. Mr. Dysart: If it please the court, we think we have evidence tending to show the actions of this child, the direction it was running, and everything gave indications that it was going upon the track. Several persons—the defendant's own witnesses—have testified that they thought it was going to run upon the track and some of them screamed. We are asking to prove the conduct and motions of the child before it got upon the track. By the Court: The objection is sustained; you are confusing the province of the jury with expert testimony. Mr. Dysart: We started to ask a question based upon this theory, that the child was running towards the railroad, towards a dangerous point. By the Court: Mr. Dysart, the witness could not blind the jury on that question; I can only repeat without going into particulars, leave the matter for the jury.''

M. W. Burk, a locomotive engineer, an expert witness for defendant, testified that under the circumstances detailed by engineer Ross it was impossible for him to have avoided the accident even if he had seen the child when it first got on the track. On cross-examination he was asked: ''Q. If you had been in Mr. Ross's position and had seen that child approach the track as though it was going on, what would you have done?'' Defendant objected and the objection was sustained. The Court said: ''I excluded that question awhile ago. I will permit it to be asked in a modified form. He can ask if an engineer saw a child running along a public platform where there is a lot of people, is it customary—would he naturally slow up the train or would he suppose the child would be taken care

of? Mr. Grover: We still object to the question even in the modified form. The child was in no danger at all until it got upon our track. By the court: I don't think we differ a particle, Mr. Grover. Say an engineer saw a child running along a plank platform sixteen feet wide, a crowd of people there, what would he naturally do?" To the modified question the witness answered. "If there was anything in the movement of the child to impress the engineer with the thought that it was liable to get on the track, of course he would attempt to stop the train if there was something to impress him that the child was liable to get on the track. By the Court: The question is, would he naturally feel that it was going on the track or naturally feel that it would take care of itself? A. I think he would feel the other way, that it wouldn't go on the track." To these rulings on the evidence, exceptions were duly taken.

The court gave the jury the following instructions: At the request of the plaintiffs:

"1. The jury are instructed that if they believe and find from the evidence that defendant approached and passed the depot at a greater rate of speed than six miles an hour, then such rate of speed was excessive and negligence on the part of the defendant. And if you further believe and find from the evidence that such excessive speed caused or materially contributed to the death of the child; or if you believe and find from the evidence that defendant's engineer saw the perilous position of the child upon the track or about to place itself in a perilous position upon the track, or that he could have seen and known it by the exercise of ordinary care; or if you believe and find from the evidence that such omissions of duty and acts of negligence, if proven, contributing together, caused or materially and directly contributed to the death of the child, then your verdict should be for the plaintiffs.

"2. Although you may believe from the evidence that the engineer gave the danger signal for Deering and others on or near the track and exhausted a part of

his air to slow his train to avoid injury to them, and that it was a matter of prudence for him to do so, yet so soon as the engineer discovered that said parties were off the track and in a position of safety, then it was his duty to be on the lookout for the safety of persons on the depot platform. And if you believe from the evidence that said engineer negligently failed to do so and thereby failed to see the child, and in consequence thereof the child was struck and killed in consequence of his negligence, then your finding should be for the plaintiffs.

"3. You are further instructed that it is conceded in this case that the engineer did not see the child before she was struck and killed. Now if you believe from the evidence that he could have seen her by the exercise of ordinary care in time to stop his engine before he struck her, or in time to slow his train for the child to cross over the track before being struck, but negligently failed to do so, then your finding should be for the plaintiffs.

"4. You are further instructed that in coming into a station such as that at Macon, the law required the employees of the train to be watchful and on the lookout to avoid accidents and injury to those on or about the platform. And if you believe from the evidence that in coming into the station at Macon the defendant's engineer or other servants of the defendant saw the child in a perilous position, or saw it about to place itself in a perilous position by running upon the track, or could have seen the same by the exercise of ordinary care, in time to have avoided the injury and saved the life of the child, but negligently failed to do so, then the defendant is liable, and the finding must be for the plaintiffs.

"5. If you believe from the evidence that the child took fright and ran across the depot platform in a northwesterly direction towards the railroad track while the engine and cars were approaching, in a manner to indicate to a person of ordinary prudence and caution that she intended to, and would run upon the

track, and that defendant's engineer or other employees saw her or could have seen and known of her design and peril by the exercise of ordinary care, in time to have avoided the injury and saved her life, but negligently failed to do so, then the defendant is liable, and the verdict must be for the plaintiffs although you may further believe from the evidence that the engineer did not have time to stop the train and avoid striking her after she got upon the track.

"6.   You are further instructed that in this kind of action the measure of the recovery is fixed by the law at $5,000.   Therefore, if your verdict and finding be for the plaintiffs, you should assess the damages at said sum of $5,000."

At the request of defendant:

"1.   Although the jury may find from the evidence in this case that at the time when and place where Myrtle Livingston was killed, the defendant's engine was moving at a rate of speed in excess of six miles per hour, yet if they further find from said evidence that after the dangerous situation of said Myrtle Livingston was discovered upon the track, or could have been discovered by the exercise of ordinary care, and that said engine was then running not to exceed six miles an hour, and that it was then and there impossible for said engineer to stop said engine in time to avoid striking and killing said Myrtle Livingston,   then   they are instructed that the plaintiffs are not entitled to recover in this action, and your verdict must be for defendant.

"2.   Although the jury may believe from the evidence that plaintiff's child got upon defendant's track from two to fifteen feet in front of defendant's moving engine, and that defendant's engineer saw it, or by the exercise of ordinary care might have seen it, still if the jury believe from the evidence defendant's engineer had, just a few yards south of the depot, discovered the apparent peril of others upon the track, and had used his best efforts to stop the train and applied the emergency air brake to avert a collision with them, and

was then unable to stop the train—still moving—in time to save the child, then the verdict must be for the defendant. If they believe from the evidence the child got upon the track after the speed of the train was reduced to six miles an hour and then too late for the engineer to stop the train by the exercise of ordinary care.

"3.  Although the jury may find from the evidence in this case that the engineer in charge of the locomotive then attached to the defendant's train at the time and place in question, did not see the child before the train struck and killed her, and that if said engineer had looked he could have seen the child before striking her with the engine, and that after first applying the emergency brake on the engine in order to avoid striking or injuring the witness Deering and others before reaching the place where said child was struck and killed, that said engineer had not exhausted all the air upon his engine, and in the effort to avoid injuring said men, and if he had seen said child there still remained at his disposal fifty-five pounds of air on said engine, to be used in stopping the speed of said train, and that said fifty-five pounds of air was not used by said defendant's engineer in order to avert the injury and death of the child, yet if they further find from the evidence that after making the first application of air to said engine a period of time from ten to twenty seconds would have elapsed before said engineer could have applied said air again, even if he had seen the said child and observed its danger, and that before said additional air could have been used and the speed of the said train then and there slackened thereby, said train running at the speed it was then going would still run upon and injure the child, even though said child was from two to fifteen feet from the engine when it came upon defendant's track, then you are instructed that plaintiffs can not recover and your verdict must be for the defendant.

"4.  If the jury believe from the evidence that defendant's train was approaching the station at Ma-

con and when near the same saw one or more parties upon, or in dangerous proximity to the track, and the engineer in charge thereof sounded the danger signals and applied his emergency air brakes, and as he passed the aforesaid parties he spoke to and admonished them and looked to see that they all had escaped danger, and while the said engine was still in motion and while the said engineer was still impressed by the apparent danger that the aforesaid men had placed themselves in, and his attention attracted thereby, the child of plaintiffs escaped from the custody of its elder brother, or from a place of safety where he had left it, and ran along or near the center of the platform fifteen or eighteen feet wide, almost paralleling the tracks of defendant, when it suddenly started across the track directly in front of the moving engine and within two or four feet thereof and was caught and killed, then the verdict must be for the defendant.

"5. The mere seeing—or capacity of seeing—a person walking or running along at or near the center of a platform fifteen to eighteen feet wide, almost paralleling a railroad track, will not, of itself, demand in law of an engineer in charge of a train that he stop to inquire the intention of such person; nor will the law hold a railroad company responsible for the sudden impulse of any spectator who, from fright or panic, rushes suddenly and unexpectedly within two to four feet and in front of a moving train, and if the evidence shows that such facts are true of plaintiffs' child, then the verdict must be for the defendant.

"5. There is no presumption of law, or fact, that upon a crowded depot platform any of its occupants will suddenly leave the crowd and rush immediately in front of a moving train.

"7. If the jury find from the evidence in this case that at the time and place here in question the plaintiffs' daughter, a child between three and four years of age, suddenly stepped upon defendant's track and was simultaneously thereafter struck and killed by one of defendant's engines then and there attached to a

train then and there moving on said track, then you are instructed that plaintiffs can not recover in this action and your verdict must be for the defendant.

"8. In passing upon the question of negligence the jury should consider all the facts and circumstances proven in evidence, as well as the apparent danger of the witness Deering upon the track, the natural effect it had upon the engineer, if any, and the crowded condition of the platform, if proven.

"9. If from all the facts and circumstances proven the jury believe the killing of plaintiffs' child was one of those unforeseen and unavoidable accidents, then the verdict must be for the defendant, no matter how sad and mournful the result proved to be.

"10. By the term 'ordinary care' as used in the foregoing instructions the jury are instructed that such precaution or care is meant as would be exercised by a prudent man under like circumstances and situated as defendant's engineer then was prior to the striking and killing of Myrtle Livingston, as shown by the evidence in this case.

"11. If the jury find from the evidence in this case that the mother of the child whose death is here sued for, negligently permitted said child and its little brother, both of tender years, to wander unattended upon the platform, track and depot grounds of defendant at Macon at the time in question, whereby said child was afterwards struck and killed by one of defendant's moving engines, then they are instructed that the plaintiffs can not recover in this action, and your verdict must be for the defendant, even though you should further find from said evidence that defendant's engineer then and there in charge of its engine failed to discover the dangerous situation of said child before it was struck and killed by said engine, and that said engine was then and there running at a rate of speed in excess of six miles per hour, unless the jury find from the evidence the engineer saw the danger of the child in time to have prevented it or by the exercise of rasonable care might have seen it.

"12.   The jury are instructed that the mere fact, if it be a fact, that at the time and place in question the plaintiffs' child was running along the depot platform in a northwest direction to, parallel to and approaching defendant's railroad track, did not require defendant's engineer to stop his engine or check its speed, nor to observe the movements of said child upon said platform, as said engineer had a right to presume that said child would stop on said platform in a place of safety before reaching or attempting to cross said track; nor is the defendant liable in this case because the engineer either failed to observe the movements of said child on said platform or check the speed or stop his engine because of said movements of said child.

"13.   The court instructs the jury that the burden of the proof in this case is on the plaintiffs and it devolves upon the plaintiffs, before they can recover, to establish their case by a preponderance of the evidence to the reasonable satisfaction of the jury."

To the action of the court in giving the said instructions, and each of them the plaintiffs at the time excepted and saved their exception.

I.   From the instructions given at the request of the defendant, and from the ruling on the defendant's objections to the evidence, it is very clear that the case was given to the jury on the theory that the defendant was not liable for the failure of the engineer to observe the child before it got on the railroad track, even if by looking he could have seen it.   In one of the instructions given at the request of the plaintiffs the jury were told that the defendant was liable if the child took fright and ran across the depot platform in a northwesterly direction in a manner to indicate to a person of ordinary prudence and caution that she intended to and would run upon the track and the engineer saw or by the exercise of ordinary care could have seen her in time to have avoided the accident, but negligently failed to do so.

The law was properly declared in that instruction, and there was substantial evidence on which to base

it. Several witnesses saw the child as she was running and realized the peril. The engineer was in as good position to see it as those witnesses were, as he himself said, and if he had seen it before he released the brake he said he could have stopped in time to have avoided the accident. But he was apparently provoked at the conduct of those foolhardy young men and yielded to an impulse to administer to them a well-merited rebuke, and the circumstances in evidence afford the plaintiffs ground to contend, as they do, that if he had not yielded to that impulse but had looked ahead as soon as the young men moved out of danger, he would have seen this child running into peril and could have saved its life. But the instructions given at the request of the defendant are in direct conflict with that instruction. In the first instruction for defendant the jury are told if at the time the engineer discovered or by the exercise of ordinary care could have discovered the child on the track it was impossible to stop the train in time to save the child's life, the verdict must be for the defendant. That instruction was in accordance with the view of the law the learned counsel for the defendant urged during the introduction of the evidence when he said: "The child was in no danger at all until it got upon our track." The child was running into danger, as all who saw it realized, before it reached the track. More than one of the defendant's expert witnesses, locomotive engineers, said in effect that if they had seen the child running in a northwesterly direction in a manner to indicate that it was going upon the track they would, if in charge of the engine, have made every effort to stop the train. But the peril of a child running, as some of the witnesses said this child was running, is a fact within the discernment of common sense and requires no expert knowledge.

All of the defendant's instructions ignore the duty of defendant's engineer to have observed the movements of the child before it actually got on the track, and in this they were erroneous.

The fourth instruction for defendant gives to the

conduct of the engineer in looking at and speaking to the young men in question, as he passed them, the character of duty to see that they had escaped danger. But the evidence of the engineer himself was that he saw the young men move away from the place of danger readily on the sounding of the alarm signals when he was down by the water tank, so that by the time he reached them he was under no duty to give them any further attention.

The defendant's fifth instruction lays down an abstract principle applicable to persons of discretion walking or running on a platform paralleling a railroad track, but it has no application to a child three and a half years old. Nor does the evidence justify the hypothesis of a sudden and unexpected rush of a spectator in front of a moving train. This child ran fifty feet diagonally across the platform towards the track, and her manner and course indicated that she was aiming to reach the trunk platform on the other side of the track. The sixth and seventh instructions are liable to the same criticism.

We see no valid objection to defendant's eleventh instruction. Whilst there was no express evidence that the mother permitted the child to be at the depot unattended, yet the fact that the child was there unattended is a circumstance which the jury might consider with any other evidence that might be in the case bearing on the question of whether the mother had so permitted.

Defendant's twelfth instruction goes to the length of telling the jury that the defendant's engineer was not bound to observe the child while running on the platform in a northwest direction approaching the track, nor to check the speed of the engine, as he had a right to presume the child would stop on the platform before reaching or attempting to cross the track. That would be a proper declaration of law applicable to a person of mature years, but it is wholly inapplicable to a child of three and a half years. [7 Am. and Eng. Ency. Law (2 Ed.), 405.]

II.   The ruling on the evidence was also error. The plaintiffs sought to ask one of defendant's expert witnesses, a locomotive engineer, what was the proper thing for an engineer in the position of the one in charge of this engine to do if he had seen a child approach the track as though it was going on; but the court modified the question so as to make it ask if an engineer should see a child running on a public platform where there were a lot of people, whether he would naturally feel that it was going on the track or that it would be taken care of or would take care of itself. The question as modified left out of view the direction in which the child was running and assumed that the people there were in a position near enough to the child to rescue it, or that the child had sufficient discretion to take care of itself, neither of which assumptions was justified.

For the errors above mentioned the judgment is reversed and the cause remanded to the circuit court to be retried according to the law as herein expressed.

All concur, except *Robinson, J.,* who dissents.

### IN BANC.

PER CURIAM.—The foregoing opinion by VALLIANT, J., in Division One, is adopted as the opinion of the Court in Banc. *Burgess, C. J., Brace, Marshall, Gantt* and *Valliant, JJ.,* concur. *Sherwood* and *Robinson, JJ.,* dissent. The court is of the opinion, however, that the instructions given for the plaintiffs should be modified in the following particulars, viz.: Instruction 2, instead of saying that after the engineer saw that the young men had moved off the track into a position of safety "then it was his duty to be on the lookout for the safety of persons on the depot platform," should say, "then it was his duty to be on the lookout in the direction in which his engine was moving." From instruction 4, the words "or other servants of the defendant," should be omitted. Instruction 5: So much of the sentence as reads, "and the defendant's

engineer or other employees saw her, or could have seen and known of her design and peril by the exercise of ordinary care, in time to have avoided the injury and saved her life," etc, should be changed to read, "and the defendant's engineer saw her or by the exercise of ordinary care would have seen her in time to have avoided the injury and saved her life," etc.