ANTHANETTE E. HEINZLE, by Next Friend, MARTIN HEINZLE, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Division Two, June 16, 1908.

1. **NEGLIGENCE: Perilous Position: Moving Towards Track: Instruction: Variance.** When a motorman in charge of an electric car, moving from fifteen to twenty miles an hour along a street, sees a child leave the curb and start diagonally across the street in front of the car, he sees that child in a perilous position. And so where the petition charged that the motorman saw or could have seen the child's "dangerous and perilous

condition," it was not error to instruct the jury that if he saw or could have seen her "moving towards and upon said tracks in time," etc. There is no vital or fundamental difference between the allegation and the facts submitted by the instruction.

2. ————: ————: **Child.** The doctrine that an adult standing near a street-railway track is in no peril, and is not actually in a perilous position until standing on the track or near thereto, has no application to a young, inexperienced child. Such a child is in peril and in a perilous situation when it begins to move towards the track in front of an approaching car, and the motorman who sees it moving towards or upon the track in front of his car, is chargeable with notice of its peril, as he is also if by the exercise of ordinary care he can see it but does not.

3. ————: **Instruction: General Words: Agent: Restricted to Motorman.** The general words in plaintiff's instruction that if "the agents, servants and employees in charge of and operating said car, either saw, or by the exercise of ordinary care on their part could have seen, plaintiff moving towards or upon said track in time to have checked the speed of said car," etc., were made sufficiently specific and cured of their too general character, by an instruction for the defendant which told the jury that if the "motorman" saw, or could have seen, etc. The instructions are not in conflict, but defendant's simply made definite and specific the general language of plaintiff's.

4. ————: **Injury to Child: Wantonness.** Where a child of tender years is seen moving towards or upon the tracks in front of an approaching car, and is struck by the car, it is not necessary to show that the acts of the motorman were wilful or wanton in order for plaintiff to recover. Wherever the language of the opinions in other cases indicates that the acts of the servants must amount to wilfulness or wantonness, it was used with reference to adults in the full possession of their faculties, who the motorman had a right to presume would not go on the track in front of his car.

5. ————: **Different Acts: Consistent Allegations.** Negligence in failing to discover plaintiff approaching and going upon defendant's tracks in time to have checked the speed of the car; negligence in failing to keep a vigilant and reasonable lookout for children upon the track or approaching the same, and whether the motorman in the exercise of ordinary care could have discovered plaintiff in the act of approaching the tracks, etc., and negligence in failing to approach the crossing with said car under reasonable control, are consistent allegations, and each might have contributed to the injury of plaintiff.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover,* Judge.

AFFIRMED.

*John H. Lucas* and *Ben F. White* for appellant.

(1) The court erred in giving instruction 1 for plaintiff. (a) It was an enlargement of the issues in that it authorized a verdict for plaintiff if the car could have been stopped after plaintiff could have been seen, when, under the allegations, she was only entitled to recover if it was not stopped after her peril could have been seen. Reno v. Railroad, 180 Mo. 486; Kellny v. Railroad, 101 Mo. 75; Van Bach v. Railroad, 171 Mo. 338; Markowitz v. Railroad, 186 Mo. 350; Eppstein v. Railroad, 197 Mo. 733; Boyd v. Railroad, 105 Mo. 371; Percell v. Railroad, 103 S. W. 1038; Schmidt v. Railroad, 160 Mo. 52; Hogan v. Railroad, 150 Mo. 54; Fiedler v. Railroad, 107 Mo. 652; Dunkman v. Railroad, 95 Mo. 232; Williams v. Railroad, 96 Mo. 275; Czezwzka v. Railroad, 121 Mo. 215; Lloyd v. Railroad, 128 Mo. 601. (b) There was no evidence on which to base a submission on the humanitarian doctrine. (c) The facts necessary to be found by the jury in order to entitle plaintiff to recover on the humanitarian doctrine are flatly contradicted by specifications of the petition; and it is also in conflict with instruction 3 for plaintiff. Grout v. Railroad, 102 S. W. 1029; McQuillin on Instr., p. 51; Haley v. Railroad, 197 Mo. 25. (d) It assumes plaintiff's peril in approaching the track, in place of leaving it to the jury. Ruschenberg v. Railroad, 161 Mo. 87. (e) It ignores the question as to the time when plaintiff's position became perilous, which was the gist of the case. Birdwhistle v. Woodward, 95 Mo. 117. (2) The court erred in giving plaintiff's instructions 2 and 3. (a) They both impose the duty of keeping a lookout ahead on

both the motorman and conductor.  This very feature was condemned by this court when this case was here before.  Heinzle v. Railroad, 182 Mo. 559.  (b) They are both subject to the same criticism as instruction 1 in regard to the humane doctrine; and also in authorizing a recovery if plaintiff could have been seen by the motorman in time to have stopped the car, and did not require that her peril could have been seen in such time.

*Douglass & Watson* and *Wright & Smith* for respondent.

Plaintiff's instructions properly declare the law. Meeker v. Railroad, 178 Mo. 173; Frick v. Railroad, 75 Mo. 595; Welsh v. Railroad, 81 Mo. 471; Kelley v. Railroad, 75 Mo. 138; Werner v. Railroad, 81 Mo. 368; Winters v. Railroad, 99 Mo. 509; Scullin v. Railroad, 184 Mo. 695; Eppstein v. Railroad, 197 Mo. 733; Moore v. Railroad, 92 S. W. 390; Hovarka v. Railroad, 191 Mo. 453; Eckhard v. Railroad, 190 Mo. 606; Bunyan v. Railroad, 127 Mo. 12; Cytron v. Railroad, 104 S. W. 109.

GANTT, J.—This is an appeal from a judgment of the circuit court of Jackson county, for personal injuries received by the plaintiff, who, at the time of the injury, was a little girl not quite six years old. The accident happened on the 26th of February, 1901. The jury returned a verdict for the plaintiff for $10,000, and after the usual preliminary steps, the defendant has brought the case to this court on appeal.  This is the second appeal in this case, the former one appearing in the 182 Mo. 528.

It is conceded by counsel on both sides that the facts in evidence on this second trial are practically the same as those appearing on the first trial, and as there is a full statement in the former report in the

182 Mo. 528, it is not thought necessary to reproduce the evidence of the different witnesses further than to note the changes in the testimony on the last trial from that in the first. The injury to plaintiff occurred at the intersection of Fifth street and Metropolitan avenue in Argentine, Kansas. Metropolitan avenue runs east and west, is forty-one feet in width from curb to curb, the sidewalk on the north side thereof being six feet nine inches wide, and Fifth street runs north and south and is fifty-five feet wide from walk to walk. Fifth street lies west of Fourth street. The defendant company owned and operated two railway tracks running parallel with each other on Metropolitan avenue, the cars running west occupying the north track while the cars moving east run on the south track. A cross-walk spanned the avenue on the east side of Fifth street from sidewalk to sidewalk. Metropolitan avenue has a steep down grade from Fourth street to this cross-walk on the east side of Fifth street and from that point west for some distance it is practically level. The avenue otherwise was smooth and the view unobstructed. At the southeast corner of the intersection of Fifth street and Metropolitan avenue stood a two-story building, known as "The Building and Loan Association Building," and plaintiff's parents and plaintiff occupied rooms in this building. At the northeast corner of this intersection of Fifth street and Metropolitan avenue was a two-story building known as "The Fifth Avenue Hotel," which fronted seventy-five feet on Fifth street and extended east on the avenue to the alley between Fourth and Fifth. At the northwest corner of said intersection was the office of a lumber company and the southwest corner was vacant. These streets were constantly traversed by both vehicles and pedestrians, and the motorman in charge of the car which inflicted the injury upon plaintiff had been on this run for

over two years at the time of the accident and was
well acquainted with all the conditions and surround-
ings.   The east-bound cars stopped at the cross-side-
walk on the east side of Fifth street to receive and
discharge passengers and the west-bound cars stopped
at the cross-walk on the west side of Fifth street for
the same purpose.  On the 26th day of February, 1901,
the plaintiff was struck by one of the defendant's west-
bound street cars at a point a little west of the center
of Fifth street at its intersection by Metropolitan ave-
nue, and received an injury which necessitated the
amputation of her right leg below the knee.  The acci-
dent occurred late in the afternoon of the 26th of
February, 1901.  A few moments before the accident
the plaintiff, who as already said, lived with her par-
ents in the second story of the Building and Loan
Association Building, at the southeast corner at the
intersection of Fifth street and Metropolitan avenue,
started on an errand for her mother, which necessi-
tated the crossing by her of Metropolitan avenue and
Fifth street at their intersection in order to reach her
point of destination.  As the plaintiff and a small com-
panion of hers were crossing this intersection from
the southeast to the northwest corner in a diagonal
and northwardly direction, one  of  the  defendant's
street cars approached from the east, down grade, with-
out giving any notice or warning to the children as they
were running toward the track.  From Fourth street
to Fifth street on Metropolitan avenue the block is
226 feet with an alley-way on the north side about mid-
way between the two streets.  This west-bound car was
at or east of the alley in the rear of the hotel at the
time the plaintiff and her companion started across
the intersection of these streets.  She was seen by
several witnesses from the car after it turned west
on the avenue on Fourth street, as by a number of
other witnesses situated around the intersection.  It

was forty-two feet diagonally northwest from the curb from the southeast corner of Fifth and Metropolitan avenue to the point where the little girl was struck in Fifth street. Stella Drollinger was sitting in a room upstairs in the Fifth Avenue Hotel of the south side. She testified that the east-bound car passed east before the west-bound car came along going west. She saw the plaintiff start across the street as the east-bound car approached the Fifth street crossing, when the plaintiff stepped back to the curb to let that car pass and then plaintiff started in a diagonal direction northwest, and the east-bound car passed on east. The gripman of this west-bound car testified that as soon as the front end of his car came even with the rear end of the east-bound car he had a clear vision of the street and saw the plaintiff, but he testified further, "There was nothing when the cars got even to prevent his seeing the little girl, but when they got even was just the time when the little girl stepped upon the track." The conflict between the witnesses was as to the point where the two cars passed each other. Miss Drollinger testified that the east-bound car had passed east out of her sight before the west-bound car came within her view. Her testimony tended to show that these cars passed by each other east of her, and thus making the point east of her where the gripman saw or could have seen the little girl leaving this point at the southeast corner of the intersection of these two streets and going diagonally across to the northwest corner, and the evidence tended to show that the plaintiff traveled forty-two feet in this angling direction and all the time approaching the tracks, and Miss Drollinger saw her all the time and her testimony tended to show that the gripman on this west-bound car could have seen the plaintiff had he looked, but his testimony was to the effect that he saw the child when the front end of his car got even with the cross-

ing, and this would have placed him twenty-seven feet from the point where he struck the plaintiff. According to Miss Drollinger's evidence, the two cars passed each other at least seventy-five feet east of Fifth street so that he had a clear view of the plaintiff for that distance east of where his car struck her. The evidence of the witnesses tended to show that the rate of speed of the car was such that it would have traveled over one hundred feet while the plaintiff was traveling the forty-two feet. The gripman testified on a former occasion that if he had seen the child approaching from behind this east-bound car, he could have saved her. Blatherwicke testified for the defendant that he was going west on Metropolitan avenue on the north side and before he could get to the Fifth Avenue Hotel he saw the two children come from behind the east-bound car and that this west-bound car which struck plaintiff was still behind him, so that the gripman could have seen the child had he looked as soon as this witness did. Mrs. Egan, who was a passenger on the car, saw the children when the car was 200 feet away, and her attention was directed to them because she was apprehensive of danger. There was also evidence on the part of Mrs. Egan that the gripman was giving his attention to a young lady upstairs and never saw the little child until she was right in the middle of the track. The testimony of others was that they saw the child in the street, but the gripman did not. The cause is before this court on alleged errors in the giving of instructions for the plaintiff. No exceptions or objections as to evidence are insisted upon.

I. Instruction number one given by the court in behalf of the plaintiff is as follows:

"The court instructs the jury that if they find and believe from all the evidence in this case that Metropolitan avenue at Fifth street in the city of

Argentine, on February 26, 1901, was an open and public street in said city, and that at said date defendant operated an electric street railway running east and west on said Metropolitan avenue, for the purpose of transporting persons for hire from one point to another in said city, and was using the tracks and operating the railway car mentioned in the evidence, and that plaintiff was, at said date, crossing said Metropolitan avenue from the south to the north at the intersection of Fifth avenue, and that, while she was so crossing said avenue, she was run upon and knocked down by the west-bound car mentioned in the evidence, and injured to such an extent as to cause the amputation of her foot and part of her leg, and if you further find and believe from the evidence that, at the time above mentioned, plaintiff exercised such care and caution, for her own safety, as a reasonably prudent child of her age and capacity would have exercised under the same and similar circumstances, and that defendant's agents, servants and employees, in charge of and operating said car, either saw, or by the exercise of ordinary care on their part could have seen plaintiff moving toward and upon said tracks, if you so find, in time to have checked the speed of said car with safety to its passengers and to have avoided running over and injuring plaintiff, if you find such were the facts, and that said servants and employees neglected and failed to do so, and that such failures, if any, directly and proximately caused the injury to plaintiff, then your verdict shall be for the plaintiff.''

It is insisted that this instruction is erroneous and misleading because it authorizes the verdict for the plaintiff upon proof that defendant's agents, servants and employees in charge of and operating said car either saw or by the exercise of ordinary care on their part could have seen plaintiff moving towards and upon said tracks, whereas the petition charges

that said servants and employees of the defendant "saw the dangerous and perilous condition of plaintiff on, near and approaching its said tracks in time to have checked the speed of said car or to have stopped the same before striking plaintiff, or by the exercise of ordinary care could have seen and discovered the perilous position in which plaintiff was situated in time to have done so." The insistence is that the difference between the allegation in the petition and the facts submitted to the jury in this instruction is vital and fundamental, and that there was no proof to show that after the motorman saw or could have seen plaintiff's "position of peril" or her "dangerous position on, near and approaching the track," he could thereafter have stopped the car.

We do not think it is open to serious controversy that there was sufficient evidence to show that the motorman saw, or at least could have seen, plaintiff the moment the west end of his car got even with the rear end of the east-bound car, as there was nothing there to prevent his seeing the plaintiff. The evidence on the part of the plaintiff tended to show that these two cars passed each other east of the hotel, thus giving the motorman a clear view of the street crossing over which the two children were passing from behind the east-bound car, and there was ample evidence, if believed by the jury, that the motorman could have seen this little girl approaching or moving towards this track; if this were true, and the jury so found, then the child was in a situation of danger from the time she left the sidewalk, the whole of the forty-two feet she traveled in this direction towards the car track, and was in the plain view of the motorman all this time. It is true the court in this instruction did not use the word "perilous," or "perilous situation," but when a motorman in charge of an electric car moving from fifteen to twenty miles an hour along

the street sees a child of six years of age leave the curb and start diagonally across the street in front of his car, then he sees that child is in a perilous situation and this is what the court instructed the jury they must find before they could render a verdict for the plaintiff.

In Cytron v. Railroad, 205 Mo. 692, l. c. 719, in a case very similar in its facts to this, it was said: "The motorman knew his car was bound to occupy, with crushing force, the very spot the child's steps were directed to. It was obvious to the motorman that the child did not know that fact." Under such circumstances it was said: "Both danger and duty began the instant the child left the sidewalk, bound headlong into peril."

In Meeker v. Railroad, 178 Mo. l. c. 176, it was said: "The negligence charged in the petition is that the defendant's servants 'saw the child upon the tracks of the said defendant and approaching there at said crossing of said Summitt and Twenty-third streets in a position of imminent peril, or when by the exercise of ordinary care they might have seen said child upon said tracks and approaching thereto in such position of imminent peril in time to have stopped said train of cars and avoided the injury complained of.' " The defendant asked the court in that case to instruct the jury that defendant could only be held liable if the child was actually on the track and actually in a position of peril and that it could not be held liable if the child was only approaching the track and about to be placed in a position of peril. But the court refused to so instruct and the refusal of the court was assigned as error. The testimony disclosed that at sometime after the train passed the north line of Twenty-third street, the child left the southeast corner of the street and started east crossing Summitt avenue (directly across, most of the witnesses say, and diagonally

across, the others say) and that she had traveled the space of ten and a half feet from the water plug to the curb line, stepped from the curb to the street and traveled fourteen feet further eastwardly and had nearly crossed the south-bound track when she was struck by the car. The defendant complained that the court modified its instruction by inserting the words "or about to be placed" in such peril, and that by so doing enlarged the issue and without this that it misstated the law in that it made the defendant liable if the child was in a position of peril as well as if it was about to be placed in such a position, but this court said: "The modification did not enlarge the issues, for the petition charges the negligence to be that the servants of the defendant 'saw the child upon the tracks of the said defendant and approaching thereto,' etc. This is tantamount to the same thing as expressed in the instruction, that the child was in a position of peril or about to be placed in such position.". The court cited with approval Livingston v. Railroad, 170 Mo. 452, in which it was insisted that there was no danger to the child until it actually got upon the track, but this court said: "The defendant's instructions, in that case, were erroneous because they were predicated upon rules applicable to persons of mature years, but were wholly inapplicable to a child of three and a half years." And this court in the Meeker case concluded this proposition by saying: "The gripman in this case saw or could have seen this child approaching the track and about to be placed in a position of danger, or more properly speaking, running into inevitable danger and death, in ample time to have stopped the car and have averted the injury, and it was negligence for him not to do so."

While the instruction in this case did not use the words "peril" and "perilous situation" it told the jury

in plain and simple language that if the defendant's servants in charge of and operating the car, either saw or by the exercise of ordinary care on their part, could have seen the plaintiff moving towards and upon said tracks in time to have checked the speed of said car with safety to its passengers and have avoided running over and injuring plaintiff, and neglected and failed to do so, and that such failure directly and approximately caused the injury to plaintiff, then they should find for the plaintiff. This instruction meant nothing less than that, if the servants saw the plaintiff moving into a perilous situation in time to have checked the speed of said car and avoided injuring her, and failed to do so, they were guilty of negligence. The difference between the two formulas, the one in the petition and that used in the instruction, is a mere difference in words and not in substance, and we think the objection to the instruction is not tenable. This court has often declared that the presence of a railroad track is of itself a warning of danger. And, as already said, when a child of the tender years of this plaintiff is seen by the engineer or motorman in charge of a train or car, approaching the track in its front, then he sees the child is in a perilous or dangerous position. And the contention that the motorman or engineer, under such circumstances, is not obliged to stop his car simply because he sees a child on the sidewalk, or on the pavement near the sidewalk, falls far short of the facts predicated in this instruction, which required the jury to find that the child *was moving* towards and upon said tracks with the evident purpose and intention of crossing the same. And as was said in Livingston v. Railroad, supra, the doctrine so often declared as to an adult standing near the railroad track, has little or no application to a young, inexperienced child in such circumstances.

We think that the perilous situation of the plaintiff

was fairly submitted to the jury in this instruction. The jury were not authorized to find for the plaintiff merely upon a showing that the child could have been seen on the sidewalk or south side of the street, but only upon finding that the little girl was moving to and approaching the track and that the servants of the defendant saw or by the exercise of ordinary care could have seen her so moving towards the tracks in time to have avoided injuring her. The case of Reno v. Railroad, 180 Mo. 469, and other cases cited by the learned counsel for the defendant, do not in our opinion militate against the conclusion we have reached in view of the cases we have already cited.

II. Without reproducing all the testimony, it must suffice to say that we think there was ample testimony, if credited by the jury, to justify their finding that the motorman either saw or could by the exercise of ordinary care have seen the little girl in ample time to have checked his car and avoided injuring her.

III. It is insisted, however, that the court's instructions are erroneous in that they submit to the jury, "That if the agents, servants and employees in charge of and operating said car, either saw, or by the exercise of ordinary care on their part could have seen, plaintiff moving towards and upon said track in time to have checked the speed of said car," etc., because this court in the former appeal said: "Upon another trial plaintiff's instruction number four should be restricted to the 'motorman' who had control of the movement of the train." It will be noted that in this instruction the servants charged with the duty of keeping an outlook for plaintiff and of checking the car in time to avoid injuring her, were the "agents, servants and employees in charge of and operating the said car." And by the sixteenth instruction given on behalf of the defendant, the jury were instructed

that although they might believe the "motorman" saw, or by the exercise of ordinary care might have seen, the plaintiff standing on the south side of the street to permit the train going east to pass, and although they might believe the "motorman" knew or ought to have known that she intended to cross the tracks, he had a right to presume that she would not cross in front of a moving car and he was not required to stop or attempt to stop his train until such time as he saw or could have seen her in a position of peril, that is, after she had started after so stopping and was on or so near the track on which the said motorman's train was running that, if he did not stop, she would be injured, and if it was then too late to stop his train and avoid the injury plaintiff could not recover. This court has uniformly announced the rule that instructions are to be considered as a whole and when this instruction of the defendant is read in connection with the instructions given for the plaintiff, and the general language of the plaintiff's instructions as to the agents and servants mentioned therein, it is clear that the jury were directed that the motorman was the agent directly charged with the duty of seeing or exercising due care to see plaintiff moving towards and upon the defendant's tracks. In Baird v. Railroad, 146 Mo. 281, the court gave an instruction on behalf of the plaintiff using the general language, servants or agents of the defendant in charge of and operating said train, etc., and in another told the jury that the plaintiff must prove by the preponderance of evidence that the gripman saw or by the exercise of ordinary care could have seen the infant approaching the track in time to have avoided injuring it, and this court approved those instructions. We think, considering these instructions altogether, the jury could not have been misled as to the motorman being the agent or servant for whose negligence alone the plaintiff could recover. The plain-

tiff's instructions numbered one, two and three, are very different from instruction number four, which was disapproved on the former appeal in this case. That instruction in effect told the jury that if either the motorman or the conductor was not keeping a vigilant watch, and that the plaintiff was injured by the failure so to do, then the jury must return a verdict for the plaintiff. In other words, although the motorman, who had control of and was in charge of the motive power of the car, might have been keeping a vigilant watch ahead of the track, yet if the conductor was not doing so, the defendant would be liable. This was clearly erroneous and was properly condemned. Whereas in this case instructions for the plaintiff required in a strict sense that the plaintiff should prove, not only that the motorman was not keeping a vigilant lookout, but that the conductor also was negligent in this respect, but when defendant's sixteenth instruction is considered the liability was placed entirely upon the negligence of the motorman, and the jury must so have understood the instructions. Nor do we think they were in conflict, but simply made the general language of the other definite and specific. Accordingly we think this assignment of error is not well taken.

IV. Defendant also contends that the acts of the defendant's servants in charge of the car must have been wanton or willful to hold it liable for the injury to plaintiff, but such is not the doctrine of this court. While in some of the cases the language of the court would indicate that the action of the servant must amount to wantonness or willfulness, it was used in those cases with reference to adults in full possession of their faculties, and the servants of the defendants had a right to rely upon the presumption that a grownup man or woman would act with due caution for his or her own safety and not go upon a railroad track

immediately in front of an approaching engine or car, and had a right to act upon such presumption. In the very recent case of Hovarka v. Railroad, 191 Mo. 453, this court held that no such right of presumption existed in the case of a young child approaching the track, and in Eppstein v. Railroad, 197 Mo. 733, and Cytron v. Railroad, 205 Mo. 692, it was determined that if the servants of the defendants in charge of its engine or cars saw, or might have seen by the exercise of ordinary care, a person in a situation of danger in time to have avoided the injury to such person, and negligently failed to do so, the defendant was liable, and it is not necessary to show that such agents or employees wantonly and willfully injured or killed such a person even though he was himself negligent in going on the track. Nor is there anything in Kellny v. Railroad, 101 Mo. 75, which properly understood conflicts with this view. The most that can be said of the last-mentioned case is that the negligence of a servant under such circumstances was characterized as reckless, willful and wanton, but after all the ground of recovery was negligence.

V. As to the claim that the various acts of negligence alleged in the petition are contradictory of each other, it is sufficient to say that the only issues of negligence submitted to the jury under the instructions were, first, negligence in failing to discover plaintiff approaching and going upon defendant's tracks in time to have checked the speed of its cars; second, in failing to keep a vigilant and reasonable lookout for children upon the track or approaching the same and whether the defendant's motorman could have in the exercise of reasonable care discovered plaintiff in the act of approaching its tracks, etc.; third, in failing to approach said crossing with said car under reasonable control. Each of said acts is consistent with the

other, and each might have contributed to the injury of the plaintiff.

VI. We think there was no error in refusing other instructions prayed for by the defendant, as those given for the plaintiff and the defendant fully covered all the facts and law applicable thereto, and this court has often condemned the practice of giving unnecessary instructions. Certainly there can be no complaint in regard to the court not having submitted the contributory negligence of the plaintiff in this case. It was specifically presented to the jury in each of the plaintiff's instructions and in no event could the defendant have suffered on that ground, and hence we are not required to say that any error would have been committed had the court neglected to have submitted the question of contributory negligence of a child of this tender age. We have endeavored to carefully go through all the assignments of error and have read the record, and in our opinion the case was one for the jury under proper instructions of the court. We think that the instructions read all together fairly submitted the case and the judgment, therefore, must be and is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.