OF THE

## STATE OF MISSOURI

AT THE

OCTOBER TERM, 1903.

---

*(Continued from Volume 178.)*

RIES, by Guardian, Appellant, v. ST. LOUIS TRAN-
SIT COMPANY.

Division One, December 23, 1903.

Negligence: STREET CROSSING: NO EVIDENCE. The motorman was neg-
ligent in failing to give proper warning or keep a proper lookout
as his car approached a crossing where deceased was standing be-
tween the tracks, whistling to his dog, and where he could have both
seen and heard the approaching car, and yet without looking or lis-
tening or paying any attention to the approaching car, he attempted
to cross the track in front of it, and was immediately struck and
killed, and the motorman could not have stopped the car in time to
have avoided the accident between the time the deceased left his
place of safety between the tracks and the time he was struck.
*Held*, that deceased was guilty of negligence contributing directly to
his own death, and that his negligence was not only concurrent with
that of defendant's servant, but coincident with his injury, and a
demurrer to the case was properly sustained.

Appeal from St. Louis City Circuit Court.—*Hon. D. D.
Fisher,* Judge.

AFFIRMED.

*A. R. Taylor* and *A. L. Hirsch* for appellant.

(1) . The humanitarian doctrine prevailing in this State, defendant is liable under the evidence and the case should have gone to the jury. Morgan v. Railroad, 159 Mo. 262; Hutchinson v. Railroad, 161 Mo. 246. The case should have gone to the jury even had deceased been a trespasser on defendant's track. Chamberlain v. Railroad, 133 Mo. 605; Morgan v. Railroad, supra; Inland v. Tolson, 139 U. S. 558; Martin v. Railroad, 194 Ill. 147. (2) It is competent to ask a witness who was present at the time how far the motorman could have seen ahead, supposing him to possess good sight. (3) Witness should have been permitted to straighten out her testimony and clear the confusion caused by her not understanding the questions put by counsel for defendant, she desiring to do so and being recalled for that purpose.

*Boyle, Priest & Lehmann* and *Geo. W. Easley* for respondent.

The deceased could by looking and listening, at any time after coming out of the saloon, have both seen and heard the car and avoided the injury. His failure to do so constitutes such negligence as to defeat any recovery. Holverson v. Railroad, 157 Mo. 216; Watson v. Railroad, 133 Mo. 250; Boyd v. Railroad, 105 Mo. 371; Sinclair v. Railroad, 133 Mo. 241; Huggert v. Railroad, 134 Mo. 673; Vogg v. Railroad, 138 Mo. 172; Culbertson v. Railroad, 104 Mo. 35; Railroad v. Mosley, 57 Fed. 922; Kirtley v. Railroad, 65 Fed. 391; Murphy v. Railroad, 153 Mo. 262; Butts v. Railroad, 98 Mo. 272; Loring v. Railroad, 128 Mo. 349; Kries v. Railroad, 148 Mo. 321; Kotney v. Railroad, 151 Mo. 35; Kelsey v. Railroad, 129 Mo. 262; Lane v. Railroad, 132 Mo. 4;

Scofield v. Railroad, 114 U. S. 615; Maxey v. Railroad, 113 Mo. 1; Payne v. Railroad, 136 Mo. 562. It has ever been the rule in this State: "That it is such negligence for one to cross or get upon a railway track at a public crossing, or elsewhere, without looking or listening for an approaching train, as precludes a recovery for an injury sustained by him from a passing train or locomotive, whether the company's negligence also contributed directly to produce the injury or not, and has so often been decided by this court that it must now be regarded as the settled law of this State." Kelly v. Railroad, 75 Mo. 140; Maher v. Railroad, 64 Mo. 267; Fletcher v. Railroad, 64 Mo. 484; Harlan v. Railroad, 64 Mo. 480; Zimmerman v. Railroad, 71 Mo. 476; Moody v. Railroad, 68 Mo. 470; Bell v. Railroad, 72 Mo. 50; Purl v. Railroad, 72 Mo. 168; Adams v. Railroad, 74 Mo. 533. It has also been the rule of the Courts of Appeals of this State. Hanselman v. Railroad, 88 Mo. App. 123; Killion v. Railroad, 86 Mo. App. 473; Skipton v. Railroad, 82 Mo. App. 143; Molyneux v. Railroad, 81 Mo. App. 125; Lien v. Railroad, 79 Mo. App. 475; Jones v. Barnhart, 63 Mo. App. 501; Smith v. Railroad, 52 Mo. App. 36; Glenville v. Railroad, 51 Mo. App. 629. There is nothing in this record to bring this case within the exception to the general rule, that the negligence of plaintiff which contributes to the injury bars a recovery, which has lately grown up in this State, and which is known as the "humanitarian rule." That exception, denominated the humanitarian rule, only applies to cases where the acts of the defendant were so willful, wanton or reckless as to show a disregard of human life. The doctrine of the humanitarian rule is that when it is alleged and shown by the plaintiff that the act was willfully, wantonly or recklessly done, "the defendant ought not to be heard to say that the plaintiff was guilty of contributory" negligence. Sharp v. Railroad, 161 Mo. 236; Tanner v. Railroad, 161 Mo. 497; Morgan v. Railroad, 60 S. W. 195; Kellny v. Railroad, 101 Mo. 67.

"This exception is dictated by the plain rules of humanity. It means this and no more, that recklessness on the one part does not excuse willful recklessness on the other." Kelly v. Railroad, 18 Mo. App. 162.

BRACE, P. J.—This is an action for the recovery of damages for the death of Joseph Ries, husband of the plaintiff, which it is alleged was caused by the negligence of the defendant in operating one of its cars going north on Seventh street. The petition charges that said Ries was on the 30th day of March, A. D. 1900, struck, run over and killed by said car, through the negligence of the defendant's servant or agent in charge of the operation of said car, "in this, that he failed to sound the gong or bell upon said car or to warn said Joseph Ries of its approach, or to stop said car or to operate the fender of said car so as not to run over him, but instead of so doing carelessly and negligently caused and suffered said car to run upon and over him, thereby causing his death. That said car was at the time, or immediately before, it struck said Joseph Ries as aforesaid, running at an unlawful rate of speed. That said defendant was negligent in that the track was in defective condition and it carelessly permitted it to remain so."

The answer was a general denial, and a plea of contributory negligence.

No evidence was introduced tending to prove that the track was in a defective condition, that the car was running at an unlawful rate of speed, or that the fender was not operated properly.

In support of the other allegations of negligence two witnesses, Lizzie Reiter and Theresa Laubersheiner, who claimed to have seen the accident, and one witness, H. C. Montgomery, who testified as to the distance within which a car could be stopped at the place of the accident, were introduced.

At the conclusion of the plaintiff's evidence the defendant demurred thereto. The demurrer was sus-

tained.    The plaintiff took a nonsuit with leave and in due time filed her motion to set the same aside, which being overruled, she appealed.    The errors assigned for reversal are:

The sustaining the demurrer to the evidence; the refusal of the court to permit the witnesses Reiter and Laubersheiner to express an opinion as to how far the motorman could have seen ahead; and to permit these witnesses to straighten out their testimony and clear the confusion caused by their not understanding the questions put by counsel for defendants.

As to the two last assignments, it is only necessary to say, that these witnesses not only testified that the motorman could see the deceased, but to all the physical facts necessary to determine how far he could have seen him, and were permitted to make all the corrections they desired in their testimony.    The only basis for this last assignment is that the court would not permit counsel to go with them again over the same ground that they had already been over three or four times.

The only real question in the case is whether the court committed error in sustaining the demurrer to the evidence.    The accident happened at the intersection of Seventh and Pestalozzi streets in the city of St. Louis, on March 30, 1900, about twenty minutes after eight o'clock p. m.    Seventh street runs north and south, and Pestalozzi street east and west, crossing each other at right angles.    The defendant's street railway is located on Seventh street.    It is a double-track railway, the cars running north on the east track, and south on the west track.    The deceased was struck and killed by one of defendant's cars running north on the east track, on or near the north cross-walk, leading across Seventh street from the northwest to the northeast corner of said streets.

The circumstances of the accident must be gleaned as well as may be from the vague, confused, inconsistent and unsatisfactory evidence of the two witnesses

aforesaid, who claim that they witnessed it. The substance of their testimony seems to be about as follows: That on the night and at the hour aforesaid they were walking on the east side of Seventh street south towards Pestalozzi street. That when they got within the distance of four houses, or about eighty feet from the northeast corner of these streets, they saw the car approaching from the south, a short distance south of the south cross-walk, and at the same time saw deceased coming out of a saloon on the northwest corner, and going to the north cross-walk over Seventh street. In the next view of the car and the deceased that we get in this evidence, the deceased, having passed over the pavement from the saloon to the north cross-walk, over the space between the curb and the west track, over the space between the rails of that track, is seen standing on the cross-walk in the space between the west and east track looking back to the west and whistling to his little dog, which was on the pavement in front of the saloon, and the car in the meantime having passed over the south cross-walk and some distance over the space between the two cross-walks, is seen approaching and near the north cross-walk. There is no evidence tending to prove that while he was in this position he was in any danger from the approaching car. In the next and last view given by these witnesses, the deceased is seen moving from his last position on the cross-walk between the tracks, towards the east track and in doing so is struck by the fender of the car. It further appears from the evidence of these witnesses that the headlight on the dashboard in front of the car was shining brightly. That they heard no bell rung, gong sounded or other warning given as the car approached the north cross-walk. That the motorman was looking west, and they saw no effort made to stop the car before the deceased was struck. That although it was a dark night, and there were no street lights in that locality, yet there was light enough from the headlight and from

the lights in neighboring stores and houses for them to see what transpired and their evidence tended to prove that the motorman could have seen the deceased, and the deceased could both have seen and heard the car at any time after the deceased entered upon the cross-walk. The evidence of the only other witness for the plaintiff tended to prove that the car going at the rate of eight miles an hour could have been stopped at that place with the reverse in about thirty feet and with the brake in about forty-five feet.

The demurrer to the evidence was properly sustained. While the evidence for the plaintiff tended to prove that the defendant's motorman was negligent in failing to give proper warning and to keep a proper lookout on approaching the cross-walk, it also showed at the same time, that the deceased at any time after he came out of the saloon could have both seen and heard the approaching car, and yet without looking or listening or paying any attention whatever to the approaching car, he attempted to cross its track, in front of the car, and by it was immediately struck and killed in the attempt. His death was the immediate result of his own negligence, to which the negligence of the defendant's servants could have been no more than contributory. His negligence was not only concurrent with that of the defendant's servant, but cotemporaneous and coincident with his injury, and there is no room in the case for the interposition of the humanitarian doctrine invoked. The motorman was under no obligation to stop his car while the deceased was standing in a place of safety between the tracks with his back to the track on which the car was moving, whistling up his dog, and the motorman could not have stopped it in the time that intervened between the time when he left that position and the time when he was struck. The judgment of the circuit court is affirmed.

All concur.