JOHN BENNETT, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, January 14, 1907.

1. STREET RAILWAYS: Party on Track: Speed: Signals: Evidence. On a review of the evidence it is held it was insufficient to sustain allegations of rapid speed of a street car and the motorman's failure to give signals on approaching a person standing near the track.

2. ———: Evidence: Positive and Negative: Weight of: Signals. Testimony that a signal was not given by a witness giving attention and in position to hear has probative value; but such evidence may be inherently valueless from a witness who had no means of knowledge or who paid no attention to the occurrence and may become too insubstantial to offer any opposition to positive contradictory testimony; and the record is held barren of evidence supporting the charge of failure to give signals.

3. ———: Party on Track: Negligence: Evidence. Evidence relating to the conduct of a man standing near a street railway track is reviewed and he is held guilty of negligence in not observing his dangerous surroundings and acting accordingly.

4. ———: ———: ———: ———: Humane Doctrine. A motorman who comprehending the situation of the person standing on the track in time to avoid injury, deliberately runs him down, occupies the whole field of culpability to the exclusion of all other acts of negligence, and becomes the sole producing cause of the consequent collision.

5. ———: ———: ———: ———: ———. Evidence relating to the conduct of a man standing on the track and also of the motorman in charge of the approaching street car is reviewed and it is held that there was nothing in the former's conduct indicating to the latter that he would not move out of the way in time to avoid the approaching car. (Cases distinguished.)

6. ———: ———: ———: ———: ———. Ordinarily a motorman or locomotive engineer is justified in assuming that a person on a railway track will hear the warning bell or whistle and step aside in time to escape harm from the approaching car or train; but as soon as his behavior signifies that he is oblivious of danger and cannot be aroused in time to save himself, measures must be taken to save him.

Appeal from Jackson Circuit Court.—*Hon. E. E. Yates,* Special Judge.

REVERSED.

*John H. Lucas* and *Frank G. Johnson* for appellant.

(1) The court erred in overruling the demurrer to the evidence tendered by defendant at the close of plaintiff's evidence and refusing to give the peremptory instruction asked by the defendant, at the close of all the evidence in the case, for the reason that plaintiff has no cause of action against the defendant. The defendant was not negligent. The plaintiff was negligent. Davies v. Railroad, 159 Mo. 6; Moore v. Railroad, 176 Mo. 547; Petty v. Railroad, 179 Mo. 666; Reno v. Railroad, 180 Mo. 489; Aldrich v. Transit Co., 101 Mo. App. 77; Markowitz v. Railroad, 186 Mo. 350; Fellinz v. Railroad, 106 Mo. App. 162; Roenfeldt v. Railroad, 180 Mo. 566; Reis v. Transit Co., 179 Mo. 7; Shanks v. Railroad, 101 Mo. App. 707.

*Brown, Harding & Brown* for respondent.

(1) The court did not err in overruling the demurrer to the evidence tendered by defendant at the close of plaintiff's evidence, or at the close of the whole

case. Defendant waived this objection. Hopkins v. Modern Woodmen, 94 Mo. App. 408; Everly v. Railroad, 96 Mo. App. 367. (2) Plaintiff's negligence was a question for the jury. "In such circumstances the question of his contributory negligence should be for the jury." Moore v. Railroad, 95 Mo. App. 736; Moore v. Lindell, 176 Mo. 542; Meyers v. Railroad, 99 Mo. App. 363. (3) But even though plaintiff were guilty of negligence, defendant was liable under the evidence. The humanitarian doctrine is in this case big and strong. Shanks v. Railroad, 101 Mo. App. 702; Moore v. Transit Co., 95 Mo. App. 735; Degel v. Railroad, 101 Mo. App. 56; Meyers v. Railroad, 99 Mo. App. 363; Moore v. Lindell, 176 Mo. 528; Aldrich v. Railroad, 101 Mo. App. 75; Fellenz v. Railroad, 106 Mo. App. 162; Reno v. Railroad, 180 Mo. 488; Roenfeldt v. Railroad, 180 Mo. 556.

JOHNSON, J.—Plaintiff sued to recover damages resulting from personal injury alleged to have been caused by the negligence of defendant and obtained a judgment in the sum of $3,500, from which defendant appealed. At the conclusion of all the evidence, as well as at the close of that offered by plaintiff, defendant unsuccessfully requested the court to give a peremptory instruction to the jury in its favor and now insists that error was committed in submitting any issues to the jury.

The injury occurred near eight o'clock in the morning of August 12, 1902, on Fifth street between Tenney and Northrup streets in Kansas City, Kansas, and was caused by plaintiff being struck by a moving car on the "Fifth street line" of defendant's street railway system. The pertinent facts appearing from the evidence introduced by plaintiff are as follows: Fifth street runs north and south and defendant's line consists of two

parallel tracks, one of which (the east) is used for north-bound cars and the other (the west) for south-bound cars. At the time of injury cars going in both directions were run on the west track owing to repairs that were being made at that place upon the east track. A number of laborers were employed in this work and plaintiff had approached several minutes before he was struck and stopped to watch the men at work. He was standing, so he says, some six or eight inches east of the east rail of the west track, but one of his witnesses states that he was standing with the east rail of that track between his feet. He was facing east of north and therefore with his back towards the south. The car that struck him approached from the latter direction and for some distance, proceeded at slow speed, not exceeding five or six miles per hour. Plaintiff, who was about seventy-five years old and "pretty deaf," admits that he knew north-bound cars were using the west track and that he neither looked nor listened for moving cars, though he knew they were passing that place frequently. Had he looked, he could have seen the car coming from the south for a distance of five or six blocks and his position was open to the observation of the motorman. He did not hear any warning bell or signal until an instant before the collision — too late for him to step out of the way.

Plaintiff introduced, as a witness, one of the laborers, named Martin, who testified that his attention was first attracted by the ringing of the bell. He looked up and saw plaintiff, who was some twenty-five feet north of him, standing over the east rail of the west track in the position described. The car was then thirty-five or forty feet away from plaintiff. The bell was given two or three taps before the car reached a point opposite the place where witness stood and was rung again when the car was about eight feet distant from plaintiff. The car moved by witness at the rate of five or six miles per

hour, but began to reduce speed when about eight feet from plaintiff, and was moving at the rate of two or three miles per hour at the time of the collision. Witness, when pressed by defendant to give his reason for not attempting to warn plaintiff, finally replied, "I thought he might get away." No other eyewitness to the accident was introduced by plaintiff.

The defense upon the merits is very clearly outlined in the following extract from the statement of the motorman, which was received in evidence by agreement: "When I got within five feet of the point where they were working, an old man stepped from the side of the track and before I could throw off my power and apply the brakes I struck him. At the time he stepped in front of my car, I was going at the rate of five or six miles an hour. Ordinarily, I travel at the rate of ten or twelve miles an hour at this point, but on account of the men working on the track I had received slow orders, which was for the safety of the men who were working there. I saw the man just as he attempted to cross the track and I was certainly ringing my bell as hard as I possibly could. He must have been deaf as he paid no attention whatever. I asked him afterward why it was he started across in front of my car and he replied, 'Well, I didn't see your car coming. I was going over to the hospital where I am stopping and just cut across the track at this place.' "

The conductor said: "As we were north bound on Fifth street and between Tenney and Northrup avenues, I was leaning out of the back of the car over the gate watching a crowd of men who were working on the tracks. At the same time, I noticed an old man who was standing watching them. As our car got within about five feet of him, he started across the track in front of it and before the motorman could stop the same he was struck and knocked down. On approaching the workmen, the motorman was going slow. I should say

at the rate of five or six miles an hour and was ringing his bell to attract the attention of those who were working in the track. I did not see the old man look up as we approached him and I don't think he paid any attention to the warning of the motorman's bell."

Another witness for defendant, one of the workmen, stated that he was working about one hundred and fifty feet south of where plaintiff was struck and that the bell was being rung when the car passed him and continued ringing until the accident occurred. Two other workmen, King and Carey, who were introduced as witnesses by defendant, testified concerning the ringing of the bell. The former said his attention was first attracted by it immediately before the collision; the latter said he did not remember whether the bell was ringing or not. When asked if he heard it, he replied, "I cannot say that I did. It usually made plenty of noise coming along there. We were working along there and they were particular. I do not know whether the bell was ringing or not." Both of these men were at work and neither had his attention called to what was occurring until just before plaintiff was struck. Mr. Carey testified that plaintiff stepped from a position of safety in front of the moving car when it was not more than five or six feet away. The car was running up grade and plaintiff produced expert evidence tending to show it could have been stopped in a distance of ten or twelve feet.

The negligence averred in the petition is "that defendant's agents, servants, and employees so in charge of said car . . . saw the perilous position of plaintiff standing on said track at a distance of forty or fifty yards or more from the place where he was struck, or by the exercise of ordinary care and caution on their part might have seen him, as said track was wholly unobstructed, and that by the exercise of ordinary care and caution the motorman in charge of said car could

have stopped the same and prevented the injury to plaintiff . . . but that he wrongfully and negligently failed to stop said car or to give any signal of its approach and negligently and carelessly ran into plaintiff when said car was under full speed." The answer contains a general denial and plea of contributory negligence.

The charge of negligent operation with respect to the rate of speed at which the car was being run is unsupported by any evidence. All of the witnesses agree that it was moving at about half speed owing to the presence of numerous workmen on and near the track, and plaintiff's contention is that it could have been stopped in ten or twelve feet. These facts do not permit of any other reasonable inference than that the motorman was observing due care in this particular. Nor is there any evidence to sustain the allegation that warning signals were not given. All of the witnesses, who were in a condition to hear and were giving attention, say the bell was sounded repeatedly as the car approached. It is apparent that plaintiff's infirmity in the sense of hearing, coupled with his inexplicable inattention to his safety, prevented him from receiving the warnings thus given. In the face of the positive assertions of all who were listening, that the bell was rung, the statement of plaintiff, who is partially deaf and was not listening, that he did not hear it is no evidence upon which to raise an issue of fact. Nor is any value to be placed upon the negative statements of defendant's witnesses, King and Carey, that they did not notice the ringing of the bell. Both were occupied by their work; were themselves out of danger from passing cars and were not giving heed to their surroundings, until the unusual clamor of the bell that immediately preceded the blow announced to them that something out of the ordinary was occurring.

In the case of Butler v. Railway, 117 Mo. App. 354,

we had occasion to deal with the comparative evidentiary value of affirmative and negative testimony and held that when a witness is in a position and condition to hear a sound and is listening for it, his statement that he did not hear it is not devoid of probative value because another in similar situation says he did hear it. In such case, an issue of fact is raised that should go to the jury, but we recognized the rule that has the support of both reason and authority, that, when the negative evidence appears to be inherently valueless, either from want of sufficient means of knowledge or from lack of attention to the occurrence, it should be rejected in law as too insubstantial to offer any opposition to contradictory positive evidence. [Shaw v. Railway, 104 Mo. 657; Sanders v. Railway, 147 Mo. 411, 424; Cathcart v. Railway, 19 Mo. App. 113; Summerville v. Railway, 29 Mo. App. 48.] The burden was upon plaintiff to show that defendant negligently failed to give warning of the approach of the car in time to permit his escape from danger, and the record is barren of evidence supporting the charge.

Plaintiff's own conduct, as detailed by him and his witness, was in the highest degree negligent. He knew the line was in operation; that passing cars were to be expected at any moment and that the west track was on that day in use by cars running in both directions. Possessing this knowledge, the suggestion cannot be entertained that he was surprised by the fact that the car, which struck him, came from an unexpected direction. He was negligent in entering upon the track without using his senses to ascertain if a car was approaching from either direction, and equally derelict in loitering in a place of danger without giving any thought or attention to his situation. His lack of care for his own safety is accentuated by the fact that practically he was bereft of one of the two senses through which he could receive warning of coming danger and his own negli-

gence stands out prominently as the sole producing cause of his injury, unless it may be said with reason that his peril was seen or by the exercise of reasonable care should have been observed by the motorman in time to have prevented the injury by stopping the car.

In Ross v. Railroad, 113 Mo. App. l. c. 605, we said: "When a pedestrian has reached a position of peril not in wantonness nor with intent to expose himself to injury, but through inattention and carelessness, and is unconscious of his danger until too late to extricate himself, the negligence of the defendant, who, comprehending his situation in time to avoid injury, deliberately runs him down, occupies the whole field of culpability to the exclusion of all other acts of negligence and presents itself as the sole producing cause. In such case, the contributory negligence of the plaintiff but serves to afford a condition for the operation of the final act." [Waddell v. Railroad, 113 Mo. App. 680; Bunyan v. Railway, 127 Mo. 12; Holden v. Railway, 177 Mo. 456; Heinzle v. Railway, 182 Mo. 528; Sepetowski v. Transit Co., 102 Mo. App. 110; Jett v. Railway, 178 Mo. 664; Meeker v. Railway, 178 Mo. 173; Cooney v. Railway, 80 Mo. App. 226; Morgan v. Railway, 159 Mo. 275.]

That the motorman could, and did see plaintiff is conceded, but the vital question is, was there anything in the situation, appearance, or conduct of plaintiff to indicate to a reasonably careful and prudent person in the position of the motorman that plaintiff would not heed the warning in time to avoid injury? In answering this question, which controls the disposition of the case, we will assume as proven the facts most favorable to plaintiff's contention, i. e., that he was and for several minutes had been standing in close proximity to the east rail of the track with his back towards the south and was looking northeastwardly at the men who were working on the east track and did not, as stated by defendant's witnesses, step immediately in front of the moving car.

Further, we will assume, for the facts are uncontradicted, that the car was approaching slowly, the motorman was sounding the bell and that plaintiff could have heard it had he been less deaf. It must be noted that plaintiff was standing just inside the danger line. A single step would have placed him in a position of safety; consequently, there was nothing in his position to indicate to the motorman that his safety was being imperilled until the car was too close to him to be stopped in the intervening space.

Therefore, it remains to be ascertained if there was anything in the appearance or conduct of plaintiff to attract the watchful eye to his actual peril. The trainmen did not know that plaintiff was deaf, and as the signals would have been heard by one not so afflicted, the motorman was justified in assuming that plaintiff heard them and would heed them in time to save himself from injury. The bare facts that plaintiff was an old man and continued in the same attitude while the car was approaching and did not look around were not enough of themselves to proclaim his deafness, nor that his apparent inattention would continue until it became too late to avoid injury. Suppose plaintiff did not betoken, by outward sign, that he heard the bell when the car was forty feet away, should that alone have signified to a reasonably prudent man that he did not hear it and would not heed it, or, if he did, would not a prudent man have been justified in assuming that the ringing of the bell as the car neared plaintiff would convey its warning in time? Plaintiff's chief witness says he did not go to plaintiff's assistance because he expected him to get out of the way of the car. None of the many persons in the immediate vicinity of plaintiff exhibited any fear for him. The practice is so common for people apparently to ignore the approach of a street car and to wait until the last moment before getting out of the way that it was a very

natural thing for those who witnessed the occurrence to suppose that plaintiff was mindful of his situation.

From all the testimony, it is evident the motorman did not make the discovery that plaintiff was in any danger until the car was only six or eight feet away from him. Unable to stop in that distance, he redoubled his efforts to warn plaintiff by vigorously clanging the bell. We fail to find in the evidence any fact or circumstance that tends to show any want of due care on the part of the motorman, either in failing sooner to discover the peril of plaintiff, or in the efforts made after he realized it to avoid the injury. [Cole v. Railroad,—Mo. App.—.]

It must be borne in mind that the burden is on plaintiff to show by reasonable inference that the operators of the car were guilty of the commission of a wrong. A mere error of judgment will not suffice to create a liability, but we must find some facts present from which a reasonable mind may infer that the motorman was negligently indifferent to the safety of plaintiff, that he failed to measure up to the standard of care that would have been observed by an ordinarily careful, prudent and humane person in his situation. To say that, notwithstanding he had his attention directed to plaintiff and manifestly had no thought of injuring him, the motorman nevertheless should have discovered plaintiff's real, though not apparent, danger sooner than he did, would not be the result of a reasonable inference drawn from the facts and circumstances in proof, but would be the product of mere conjecture and speculation. In the Ross case, as well as in Waddell v. Railway, supra, the operator of the car admitted receiving knowledge of the peril of the pedestrian in time to make a serious question of the reasonableness of the effort employed to avert the injury. In the case of Shanks v. Traction Co., 101 Mo. App. 702, the facts differ in essential particulars from those under consideration and we are well content with the principle followed in that case, which

appears in this quotation from the opinion: "Ordinarily, a motorman or locomotive engineer is justified in assuming that a person on a railway track will hear a warning bell or whistle and step aside in time to escape harm from an approaching car or train. But measures must be taken to save an individual in that situation as soon as his behavior, or any other circumstance, signifies that he is oblivious of the danger and cannot be aroused in time to save himself. [Tartt v. Railroad, 99 Fed. 369.] As to just when it becomes the duty of a motorman or engineer to begin to put his car or engine under control is the essential question in every such case and is commonly one for the jury to answer; as is the further question of whether that duty was performed with reasonable diligence." Applying this principle to a case like the one before us, where the real negligence charged is the failure to exercise reasonable care to ascertain the danger, the fact of the collision or that of plaintiff's apparent inattention to signals, or of his delay in heeding them, so long as such delay is not obviously dangerous, are neither singly nor conjointly sufficient in themselves without the aid of other fact or circumstance to create a reasonable inference of negligence and, therefore, present no issue of fact for the jury. [Markowitz v. Railway, 186 Mo. 350; Davies v. Railway, 159 Mo. 1; Moore v. Railway, 176 Mo. 528; Petty v. Railroad, 179 Mo. 666; Reno v. Railroad, 180 Mo. 469; Aldrich v. Transit Co., 101 Mo. App. 77; Fellenz v. Railroad, 106 Mo. App. 154, 162; Roenfeldt v. Railroad, 180 Mo. 554, 566; Ries v. Transit Co., 179 Mo. 7.]

The learned trial judge erred in overruling the demurrer to the evidence. The judgment is reversed. All concur.