C. E. GESSNER, Appellant, v. METROPOLITAN STREET RAILWAY COMPANY, Respondent.

Kansas City Court of Appeals, May 17, 1909.

1. STREET RAILWAYS: Negligence: Evidence: Physical Facts: Court's Duty. Courts should be careful to abstain from drawing artificial conclusions from physical facts at variance with the testimony of witnesses; but where a conclusion from conceded physical facts is so plain that reasonable minds cannot differ about it, testimony at war with such conclusion should be rejected as wholly barren of evidentiary value and the conclusion accepted as undisputed. And, held, that where the plaintiff's testimony, standing alone, challenges credulity, yet when confronted by plain, physical facts, it loses all of its force and should not be suffered to raise a theoretical issue where there is not a real one.

2. ———: ———: Collision: Courting Danger: 'Humanitarian Doctrine. The evidence relating to a collision between a street car and a wagon is reviewed and shows that the plaintiff after knowledge of the situation with time to avoid the danger, continued carelessly to drive along the danger line when the slightest deviation would have placed him out of danger, and he is held not only guilty of contributory negligence but does not come within the protection of the humanitarian doctrine.

3. ———: Right of Way: Driver of Vehicle. A street railway and the driver of a vehicle have equal rights to the public

highway occupied by the car tracks, but since the course of a street car is restricted to the track on which it is being run, the duty of the driver is to leave the track to permit the passage of the car.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*Bird & Pope* for appellant.

(1) The court erred in refusing plaintiff's instruction A, on the right of the plaintiff and of the defendant to that part of Ninth street covered by defendant's tracks, and the duty of defendant's motorman in avoiding the collision. Deitring v. Transit Co., 109 Mo. App. 524; Luider v. Transit Co., 103 Mo. App. 574; Zander v. Transit Co., 206 Mo. 447. (2) The court erred in refusing plaintiff's instruction B, on contributory negligence. Johnson v. St. Joseph, 96 Mo. App. 663. (3) The negligence of a motorman who has a chance to save a person on the track and negligently fails to obey the dictates of humanity and save him, occupies the entire field of culpability. And to permit of the exception made by the trial court in this case is to destroy a humane by an inhuman doctrine. Zander v. Transit Co., 206 Mo. 463; Hurt v. Railway, 94 Mo. 265; Hicks v. Railroad, 124 Mo. 115; Moore v. Transit Co., 194 Mo. 1; Biscuit Co. v. Transit Co., 108 Mo. App. 301; Shanks v. Traction Co., 101 Mo. App. 702.

*John H Lucas* and *Frank G. Johnson,* for respondent, filed argument.

JOHNSON, J.—Plaintiff sued to recover damages for personal injuries which he alleges were caused by the negligence of defendant. The cause was here on a former appeal from a judgment in favor of plaintiff, but the judgment was reversed and the cause remanded

on account of errors in instructions given at the request of plaintiff. [132 Mo. App. 584.] A second trial to a jury resulted in a verdict and judgment for defendant and plaintiff appealed. Errors in the rulings of the trial court in the instructions asked by the parties are assigned by plaintiff as grounds for a reversal of the judgment, but the questions thus raised need not be discussed since we have reached the conclusion that the learned trial judge should have sustained defendant's request for an instruction in the nature of a demurrer to the evidence.

The injury occurred late in the afternoon of January 21, 1905, on West Ninth street in Kansas City, at a point about two hundred feet west of Mulberry street. Ninth street runs east and west, crosses the West Bottoms and is much used for travel between Kansas City, Mo., and Kansas City, Kan. One of defendant's lines of street railway turns into Ninth street from Mulberry street and thence runs along Ninth street westward. It consists of two tracks, the north track being used by west-bound cars and the other for east-bound cars. The tracks are laid in the middle of the street and are between two lines of iron pillars (fifty feet apart) which support an elevated street railway. The pavement at Ninth street on either side of the car tracks was in bad repair and vehicles using the street generally used the tracks and the space between them as the paving there was in good condition. The plaintiff was driving eastward on Ninth street. He had a big strong horse and a heavy wagon, but no load, and he was seated on a high spring seat at the front end of the wagon. There was a wagon just in front of him and another just behind. This string of wagons was driving on the south car track until it was overtaken by an east-bound car when the wagons were turned on to the north track to permit the car to pass. When plaintiff was perhaps two hundred and fifty feet from Mulberry street, a west-

bound car turned into Ninth street, stopped at the corner to take on passengers, and then proceeded westward at a speed of eight or nine miles per hour. Plaintiff admits he saw this car when it appeared at the curve, knew it was coming on the north track and that he would have to drive off of that track to allow it to go by. He states that he did not start to drive off until the car was about twenty-five feet away, and while his wagon was leaving the track, but before it had passed beyond the range of the approaching car, it was struck on the hub of the right front wheel with force so violent that plaintiff was thrown upward from his seat and fell to the pavement in front of the wagon.

Witnesses for plaintiff say that after the collision the car ran from one to three car-lengths before it stopped. The other wagons in the string were driven off the track in time to clear the car and this was accomplished without the necessity of undue effort on the part of their drivers. There were no obstructions in the street at this place to prevent plaintiff from following their example and he was driven in his testimony to the expedient of attempting to excuse his palpable negligence by saying that he could not begin to turn from the north track until the wagon ahead of him had turned off. His testimony presents this excuse very lamely as will appear from the following excerpts from it:

"By the Court: Q. What was there on the east-bound track immediately before you began to turn over? A. On the track, I don't think there was anything on the track.

"Q. Well, at the time the car came around the corner of Mulberry street was the right-hand track, that is, the east-bound track, free, could you have turned on it? A. Well, it was, except one wagon was ahead of me.

"Q. There was no wagon to your right, was there? A. No, there was no wagon to the right.

"Q. Why didn't you turn off immediately? A. Well, I don't know. . . .

"Q. Well, why didn't you immediately try to get off? A. Well, some way or other I couldn't get off. I don't know how it was now. I couldn't get off. I just thought the other wagon behind—he got off, and as soon as he got off, I tried to pull out of the way. I tried as fast as I could, and just had time enough to get the horse out of the way and then the wheel was cramped around. Then, of course, the car came and this front end hit the wheel and throwed me off the seat.

"Q. Well, was there anything to have prevented your turning that horse sharply towards the right, or to the south, as soon as you saw that car coming around the corner? A. As soon as I seen it I did try it, yes.

"Q. You told me awhile ago that you didn't do that until the car was within twenty-five feet of you? A. Well, just as quick as this other wagon was out of my road, I tried to just follow him right up and put my horse over.

"Q. Which other wagon were you waiting for, the wagon in front of you? A. Yes, sir.

"Q. Why did you have to wait for him? A. Well, I don't know, I don't know any more if it was something on the other side. I couldn't tell positively. I know I got off as soon as I could. I didn't stay there to get hit. I guess nobody else would."

The evidence of defendant is to the effect that plaintiff was not turning off the track when the car struck his wagon but had passed entirely off and was driving alongside the track. Defendant's theory is that the collision occurred because plaintiff was driving just on the danger line but not quite far enough away to avoid a collision between the end of the car bumper and the end of the hub of the front wagon wheel. The injuries to the wagon indisputably support this conclusion. The only points of contact between the car and the wagon were at the extreme ends of the single tree and the hub

of the right front wheel. The body of the wagon and the rear wheel were not touched and it is inconceivable that the wagon could have been in the position described by plaintiff. If, as he says, he was in the act of driving off the track towards the south, the front end of his wagon necessarily would have cleared the danger zone first, and there is no room for a difference of opinion about the proposition that in such case the front wheel hub could not have been struck a mere glancing blow (the only damage was a dent at the end) without this being followed by a collision between the car and the body of the wagon. Courts should be careful to abstain from drawing arbitrary conclusions from physical facts at variance with the testimony of witnesses, but where a conclusion from conceded physical facts is so plain and incontrovertible that reasonable minds cannot differ about it, the testimony at war with it should be rejected as wholly barren of evidentiary value and the conclusion should be accepted as undisputed and indisputable. Standing alone, the testimony of plaintiff relating to the position of the wagon at the time of the collision is so weak and unsatisfactory that it challenges credulity; but when confronted by plain physical facts which demonstrate that the wagon could not have been in the position described by plaintiff, his testimony loses all of its force and should not be suffered to raise a theoretical issue where there can be no real issue.

What we have said demonstrates beyond peradventure that the plaintiff's injury was the direct result of a peril created solely by his own negligence. With knowledge of all the facts of the situation and with ample time and opportunity to avoid the danger, he carelessly drove along the danger line when the slightest deviation would have placed him beyond the reach of danger. Plaintiff argues that despite his own negligence, he has made out a case for the jury under the humanitarian doctrine, but we do not agree with him. Had there been anything in the situation to suggest to an ordinarily careful and

prudent man in the position of the motorman that plaintiff was in peril and was oblivious to his peril, we would say that the negligence of plaintiff would not have justified the motorman in wantonly or even negligently failing to use the means at his command to prevent injury to plaintiff. But, obviously, there was nothing in the situation to suggest to the motorman that plaintiff was in peril. Neither plaintiff nor defendant possessed a superior right to the part of the public highway occupied by the car tracks, but since the course of a street car is restricted to the track on which it is being run, the duty devolves on the drivers of other vehicles to leave the track to permit the passage of the car. If the rule were otherwise, the drivers of wagons and carriages by remaining on the track could block the progress of street cars and thereby assert a superior right in themselves to the use of public streets. [Ross v. Railway, 132 Mo. App. 472.] The motorman was entitled to assume that plaintiff would leave the track in time to permit the free passage of the car and everything that was done during the approach of the car indicated that plaintiff was recognizing and performing that duty. The string of wagons of which his was one turned off to the south and proceeded alongside the track. There was no imaginable reason for any of them remaining within the range of the car, and though the motorman could see that plaintiff was hugging the danger line, he had a right to suppose that plaintiff who apparently (and actually) knew the whole situation would not deliberately run into a car that he could avoid by swerving an inch or two to the right. The case falls squarely within the rule followed by us in Bennett v. Railway, 122 Mo. App. 703.

It follows that as the judgment clearly is for the right party, it should be affirmed. It is so ordered. All concur.