W. B. WINDLE et al., Respondents, v. SOUTH-WEST MISSOURI RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, February 3, 1913.

1. STREET RAILROADS: Care Required of Persons Operating. Persons in charge of railroad cars of all kinds must keep a constant and vigilant lookout along the track to prevent injury to persons and property likely to be thereon. This obligation is

especially binding when the car's course is over a much traveled street in a city.

2. ————: **Duty Extends to Discovering Danger.** This duty is not fulfilled by an endeavor to prevent injury after the danger is actually seen; but it is just as incumbent to use such care and diligence in watching for and discovering any probable danger.

3. **HUMANITARIAN DOCTRINE:** Applicability of. The humanitarian doctrine assumes that the object in danger of being injured is capable of comprehending the danger and of intelligent action, hence of contributory negligence. The doctrine is not applicable to young children, persons *non compos mentis* or animals.

4. **CITY ORDINANCE:** Exclusion from Evidence: Proximate Cause. An ordinance of the city prohibiting horses from running at large is not available as a defense in the case stated. Such ordinances are not enacted for the benefit of railroads, and their violations are not the proximate cause of the injury. And the exclusion of such an ordinance was not error, since there was a duty incumbent on those operating the car, regardless of any ordinance.

5. **DEFENSE:** Contributory Negligence. The plaintiffs were not guilty of contributory negligence as a matter of law in permitting the horse to break loose in the manner shown in the evidence and to continue on down the street loose, but closely watched by the plaintiff and his employees.

6. **PLEADING:** In Justice Court. Pleading in justice court is not scrutinized by as strict rules as in a circuit court.

Appeal from Jasper Circuit Court, Division Number Two.—*Hon. David E. Blair,* Judge.

AFFIRMED.

*McReynolds* and *Halliburton* for appellant.

1. The humanitarian doctrine presupposes negligence or contributory negligence on the part of the party invoking the rule and in its essence is that, conceding that plaintiff was guilty of negligence, yet if defendant knew of his peril in time to save his life and limb by ordinary care then it was his duty to exercise such care, and failure to do so rendered him liable. Hall v. Railway Co., 219 Mo. 553; Potter v.

Railway Co., 136 Mo. App. 125; Dey v. Railway, 140 Mo. App. 461; Nipper v. Street Railway, 145 Mo. App. 224; Nivert v. Railway, 232 Mo. 626; Smith v. Heibel, 157 Mo. 177; Maty v. Railway, 217 Mo. 275; McGee v. Wabash, 214 Mo. 530. 2. The motorman had a right to presume that the horse would leave the track. Bennett v. Metropolitan, 121 Mo. App. 605; Bunyan v. Railway, 127 Mo. 17; Boyd v. Wabash, 105 Mo. 371; Maxley v. Railroad, 123 Mo. App. 84; Aldrich v. Transit Co., 101 Mo. App. 77; Petty v. Railroad, 179 Mo. 666; Reno v. Railroad, 190 Mo. 469; Cole v. Metropolitan, 122 Mo. App. 703. 3. And no duty rested upon him until such time as it became evident that the horse would not leave the track. Then it becomes his duty to use appliances at hand to stop his car before he struck the horse if he could do so with safety to his car and passengers. Molyneux v. Railroad, 81 Mo. App. 25; Holden v. Railroad, 177 Mo. 456; Aldrich v. Transit Co., 101 Mo. App. 77; Cole v. Metropolitan, 122 Mo. App. 703; Gessuer v. Metropolitan, 137 Mo. App. 47; Haffey v. Metropolitan, 154 Mo. App. 493; Sites v. Knott, 197 Mo. 712. 4. Unless we are to say that the measure of duty owed a mere dumb brute is higher than that which our courts accord a human being then the court should have sustained a demurrer to the evidence. No court would permit a man to walk or run open eyed and free limbed into a car or a train and allow recovery for his death. Case after case of this character has been decided by our appellate courts who have declared that a man has no right to take his life in his hands in such a manner and that no recovery can be had in such a case. Sissel v. Railroad, 214 Mo. 515; McGrath v. Railroad, 197 Mo. Brockschueidt v. Railroad, 205 Mo. 435; Degonia v. Railroad, 224 Mo. 564; Reno v. Railroad, 180 Mo. 469. 5. The plaintiffs were guilty of contributory negligence such as to preclude recovery when they permitted this mare to drift south for ten blocks along a

double track of the street railway, making no effort
to control her and knowing that the cars passed along
them every few minutes. Mulburn v. Railroad, 86
Mo. 104; Prather v. Railroad, 84 Mo. App. 88; Gee
v. Railroad, 122 Mo. App. 358. 6. The court erred
in refusing to admit Section 1 of Ordinance 1999 of
the Joplin city ordinances in evidence. The violation
of this ordinance was a proper question of fact to
submit to the jury and the ordinance should have been
admitted. Patton v. Railroad, 14 Mo. App. 589; Gil-
more v. Railroad, 34 Am. Rep. 682.

*W. J. Owen* for respondent.

1. On appeal, the party in whose favor a ver-
dict has been rendered is entitled to the benefit of ev-
ery reasonable inference of fact which the evidence
warrants to support the verdict; and, where the ver-
dict is for the plaintiff, the evidence should be viewed
by the appellate court, in its most favorable aspect,
in support of the verdict. Arnold v. Carson, 95 Mo.
App. 426; Cunliff v. Hansman, 97 Mo. App. 467; Hollo-
way v. Kansas City, 184 Mo. 19. 2. This suit was
instituted in the justice court, and only general allega-
tions of neglect alleged; and that is all that is neces-
sary in this class of cases. Schneider v. Railroad, 75
Mo. 295; Boone v. Railroad, 20 Mo. App. 232; Hill v.
Railroad, 49 Mo. App. 520. 3. In running through
towns and cities, motormen in charge of cars are expec-
ted to be more careful than at other places where not
so likely to injure persons or property, and especially
when running longitudinally in a much-traveled street,
and must keep a constant and vigilant lookout, even
in the absence of an ordinance; and failure to do so
is a failure to exercise ordinary care, and, therefore,
negligence. Frick v. Railroad, 75 Mo. 609; Holden
v. Railroad, 177 Mo. 456; Lamb v. Railroad, 147 Mo.
204; Sluder v. Transit Co., 189 Mo. 107. 4. The

failure of the motorman to discover the horse on the track was the result of the omission of that measure of duty which the law requires, in view of the locality, circumstances and dangers to be anticipated; and the due observance thereof would have enabled the motorman to have avoided the injury by the use of reasonable care. Hilz v. Railroad, 101 Mo. 36; Klockenbrink v. Railroad, 172 Mo. 678. 5. The statutory presumption of negligence arising from proof of the killing of live stock by the defendant's train, being a rule of evidence, is not modified by the stock law to restrain animals from being at large; and it is only a circumstance to be considered by the jury on question of negligence. Davis v. Railroad, 25 S. E. 224; Horn v. Railroad, 12 N. W. 752; Orcutt v. Railroad, 24 Pac. 661. 6. The motorman did not ring a bell or sound an alarm to frighten the horse, although it could be seen on the track for more than a block. Kendrick v. Railroad, 81 Mo. 521. 7. Proof of failure of a railroad to ring a bell, or sound a whistle, and the killing of stock, which was unfettered and in a situation to escape, if the signal had been given, makes a prima facie case against defendant. Persinger v. Railroad, 82 Mo. 196; Midgett v. Railroad, 124 Mo. App. 544; Rinehart v. Railroad, 129 Mo. App. 173. 8. A motorman has no right to reason that a horse or a child too young to be responsible in law for its conduct, when approaching the tracks of a street car, although looking at the car, will stop before it reaches a place of danger. A horse to whom negligence cannot be imputed could not be expected to reason with the danger of an approaching car, and get off the track, in order to avoid injury. Livingston v. Railroad, 170 Mo. 452.

STURGIS, J.—The plaintiffs sued in a justice court and obtained judgment against the defendant street car company for killing their horse on Main

street in the city of Joplin. On appeal and trial anew
in the circuit court plaintiffs again prevailed and the
case is here on appeal. The way in which the horse
happened to be on Main street of Joplin and collided
with defendant's street car is that it was being taken
by the owner, along with some twenty other horses,
from the railroad stock yards in the north part of
town to the plaintiffs' horse barn in the south part of
town. They were tied with halters in bunches of three
to five, each bunch in charge of a man or boy on horse-
back, and led along Main street going south. This
is the principal thoroughfare of Joplin and defend-
ant has double car tracks thereon and cars are passing
each way every few minutes.

Along about Tenth street, the numbers growing
larger as you go south, one bunch of horses got tangled
up by one or more horses trying to go around the
others, causing the horse in question to break loose
from the bunch, whence it proceeded on south as a
sort of free lance, but following the other horses and
to some extent watched and guided by the men in
charge. At about Eighteenth street this loose horse
forged ahead, got on the defendant's east track and
proceeded in a sharp trot down the track till it was
struck by a northbound car about midway between
Nineteenth and Twentieth streets.

The plaintiffs' petition alleges "that defendant
through its agents and employees in charge of its
car No. 29, and by reason of the negligence of said
agents and employees in charge of said car, ran said
car to and against said horse, etc." The court, by
an instruction given at plaintiffs' instance, submitted
the case to the jury only on one ground of negli-
gence, "that the motorman in charge of defendant's
car which struck plaintiffs' horse saw plaintiffs' horse
in a position of imminent peril, or by the exercise of
ordinary care could have seen plaintiffs' horse on
said track and in such position of imminent peril,

in time to have controlled the speed of said car and avoided the collision by exercise of ordinary care with the means and appliances at hand without injury to the passengers on said car, and that said motorman nevertheless negligently permitted said car to run into and against plaintiffs' horse and injure same.''

Something is said as to the petition not being sufficient to warrant a submission of the case on this theory of negligence. Certainly in a justice court, where it takes a very skillful lawyer to draw a bad pleading, this general allegation of negligence, taken with the facts stated as to the horse getting loose and being on the defendant's track, is sufficient to warrant a submission of this case on this ground of negligence. [Hill v. Railroad, 49 Mo. App. 520, 121 Mo. 477, 26 S. W. 576; Mack v. Railroad, 77 Mo. 232; Boone v. Railroad, 20 Mo. App. 232; Schneider v. Railroad, 75 Mo. 295.]

The defendant contends that the instruction above mentioned submits the case on what is termed the ''humanitarian doctrine'' and insists that the legal principles applicable to cases of that character be applied to this case; and hence that the defendant's motorman in charge of the car had a right to assume that the horse would leave the track and owed the horse no duty until it became evident that the horse was oblivious to danger, etc. As a corollary to this it is insisted that the defendant owes no higher duty to a horse on the track than it does to a human being. [Citing Bennett v. Railroad, 122 Mo. App. 703, 99 S. W. 480; Sissel v. Railroad, 214 Mo. 515, 113 S. W. 1104, and like cases.] This reasoning is wrong in that it assumes that the degree of care imposed in such cases is based on the value of the object in danger of being injured, which, though a fact to be considered in proper cases, is not a fundamental distinction. The humanitarian doctrine assumes that the object in danger of being injured is capable of comprehending

the danger and of intelligent action, and hence of contributory negligence. The doctrine has no application to young children or to persons *non compos mentis* and should not be applied to horses. "Horse sense" does not go that far. [Livingston v. Railroad, 170 Mo. 452, 471, 71 S. W. 136; Boland v. Railroad, 36 Mo. 487; 7 Am. & Eng. Ency. Law (2 Ed.) 405; 29 Cyc. 533 and 537.]

It is well settled, we think, that the persons in charge of railroad cars of all kinds must keep a constant and vigilant outlook along the track to prevent injury to persons and property wherever there is reason to believe such persons or property are likely to be found on such tracks; and this applies especially to cars passing rapidly along the much traveled streets of a populous city. [Sluder v. Transit Company, 189 Mo. 107, 136, 88 S. W. 648, and cases cited.]

This duty is not merely to use ordinary care to avoid injury after the danger is actually seen by the motorman but to use such care and diligence in watching for and discovering the danger. [Atterberry v. Railroad, 110 Mo. App. 608, 614, 85 S. W. 114; Beall v. Railroad, 97 Mo. App. 111, 71 S. W. 101; Spencer v. Railroad, 90 Mo. App. 91, 94; Hill v. Railroad, 49 Mo. App. 520, 534, 121 Mo. 477, 26 S. W. 576; Wasson v. McCook, 80 Mo. App. l. c. 489.]

On this branch of the case the court at defendant's request charged the jury that the mere fact of the horse being on the track traveling toward the car did not require the motorman to check or stop the car or sound the whistle, but that the motorman might assume that the horse would leave the track, and before the plaintiffs could recover the jury must find that there was something in the action or conduct of the horse to notify the motorman that the horse was unaware of the danger of the coming car. This instruction is certainly as favorable to defendant as it is

entitled to, and perhaps more so, under the authorities above cited.

This instruction would have been more appropriate in a case where the horse was not actually on the track but so near to it as to raise a question of the motorman's duty in avoiding a collision in case the horse should move onto the track from fright or other cause. [Moxley v. Railway Co., 123 Mo. App. 84, 99 S. W. 763.]

It will readily be seen that this case is far different in its facts from Hebeler v. Met. Ry. Co., 132 Mo. App. 553 (112 S. W. 34), where the horse was being driven by and was under the direct control of the plaintiff. In that case it was the driver and not the horse on whose intelligent action in moving away from danger the motorman had a right to rely.

It could hardly be contended that the facts proven are insufficient to warrant the court in submitting to the jury the question of whether or not the motorman did see, or by the exercise of ordinary care might have seen, the horse on the track and it and the car moving toward each other in sufficient time to have avoided the collision by checking or stopping the car. The accident occurred after dark but the street was so well lighted that several bystanders saw the details of the accident and the car was equipped with a head light and running on a straight track. The evidence was that the horse could be readily seen as it and the car approached each other, each coming straight down the track, for at least a block. The car was equipped with air brakes and did stop within ten feet when it struck the horse. While there was no expert evidence to show the exact space within which a street car so equipped could be stopped, yet, to hold that such a car so equipped and usually stopping at every street crossing could not have been controlled or stopped by an active and alert motorman

within the space of a half block or more is to go against common knowledge.

The court refused to admit in evidence a section of an ordinance of the city of Joplin prohibiting horses and other animals from running at large and this is assigned as error. There are two answers to this contention. One is that the court admitted another ordinance of said city having practically the same provisions. Another answer is that such an ordinance only bears on the question as to whether the persons in charge of the moving car are required to anticipate such stock being on the track and must therefore keep a vigilant watch to see that the track is clear. [Averill v. Santa Fe Receivers, 72 Mo. App. 243.]

Such laws are not enacted for the benefit of railroads and are not the proximate cause of the injury. [Kirkpatrick v. Railroad, 71 Mo. App. 263, 267.]

Besides the duty of the motorman to keep a vigilant watch to see that the track is clear in a case like this is imposed by other considerations than the likelihood of loose stock being on the track. Such duty arises even at a country road crossing. This duty is imposed not only for the protection of animals but of human beings. [Spencer v. Railroad, 90 Mo. App. 91, 96.] Such duty is imposed on railroads operating on much traveled streets regardless of any ordinance. [Sluder v. Transit Co., 189 Mo. 107, 137, 88 S. W. 648, and cases cited.]

There was evidence showing that as the horse approached the car, one of the men in charge of the horses rode forward and tried to drive or scare the horse off the track but without avail.

The instructions asked by defendant on the question of contributory negligence predicates such contributory negligence on the fact that the horse having escaped from the custody and control of plaintiffs was, with plaintiffs' knowledge, on the defendant's track,

where cars passed frequently, loose and not under his control, and that in such case defendant would only be liable for willful and intentional injury. The jury was not asked to pass on the question of whether plaintiffs and their employees used reasonable efforts to get the horse off the track after its position on the track and the approaching car made the danger apparent. There was certainly no error in refusing the instruction as asked. The plaintiffs were not guilty of contributory negligence as a matter of law in permitting the horse to break loose in the manner shown by the evidence and to continue on down the street loose but closely followed and watched by plaintiffs and his employees.

The facts in this case are quite different from those of Milburn v. Railroad, 86 Mo. 104, and other cases cited by defendant.

We think the case was fairly tried and the same is affirmed. All concur.